RAU *v*. THE UNION PAPER MILL COMPANY.

Where individuals, engaged as partners in the conduct of a given
business, applied to and obtained from the superior court a char-
ter incorporating them under the same name as that previously
borne by the partnership, although the petition for incorpora-
tion and the order granting the charter recited in loose and gen-
eral terms, but without describing any particular property, that
the capital stock of "thirteen thousand dollars in lands, machin-
ery, water-power, money, other material and property," had
been fully paid in, yet where in fact the corporation was never
organized and never actually did business as such, but the busi-
ness was continued by the partnership, and the land referred to
in the petition for incorporation was sold by certain of the peti-
tioners to whom it had belonged prior to the application for a
charter, to a *bona fide* purchaser for value, who bought without
notice of the fact of incorporation, and whose title was duly re-
corded, such land was not subject to a judgment against the cor-
poration obtained by a creditor upon an account for goods sold
and delivered to the corporation as such after the sale of the land
had been made.

December 21, 1894.

Levy and claim. Before Judge CLARK. Rockdale
superior court. April term, 1894.

J. N. GLENN, for plaintiff.

HENRY JACKSON and J. R. IRWIN, for claimant.

ATKINSON, Justice.

An execution in favor of Rau against the Stewart
Paper Manufacturing Company, based upon a judgment
of date September 14th, 1892, was levied upon 100 acres
of lot of land number 318 and 65⅖ acres of lot 317 in
the 16th district of Rockdale county, the levy embrac-
ing all the buildings, engines, machinery, etc., located
on the land, the property being known as the Rockdale
Paper Mill lands. The property was claimed by the
Union Paper Mill Company. There was a verdict find-
ing the property not subject, and plaintiff's motion for
a new trial being overruled, he excepted.

It appeared from the evidence, that in July of 1886,

Benj. N. McKnight and Michael J. Brannon, of Rock-
dale county, Geo. W. Stewart and Wm. M. Stewart and
M. J. Ivey, of Fulton county, applied to the superior
court of Rockdale county for a charter, praying that
they be incorporated under the name of the Stewart
Paper Manufacturing Company, together with various
other prayers, and that in August of that year the char-
ter so applied for was granted by the court.   It also ap-
peared that from the year 1884 up to the time of this
application for and grant of charter, and until the year
1888 thereafter, the title to the land levied upon and on
which the paper plant was situated was in Benj. N.
McKnight, and that on May 30th of the year last
named, to wit 1888, said McKnight executed to Geo.
W. and W. M. Stewart a deed conveying five sixths of
165 acres, including the paper mill property, and on
May 16th of the same year said McKnight executed to
M. J. Ivey a deed to the remaining, or one sixth interest
in the same property.   It further appears that in May,
1888, Geo. W. and W. M. Stewart executed to Well-
house & Sons a warranty deed to the same property and
interest as was conveyed to the former by McKnight,
and that the Stewarts having executed this deed to
Wellhouse & Sons for the purpose of securing a loan,
the latter in turn executed to the Stewarts a bond for
titles, whereby they obligated themselves to reconvey to
the Stewarts upon the payment of the loan secured by
said deed.   Thus the matter stood until October 7th,
1890, when Geo. W. and W. M. Stewart conveyed five
sixths of the absolute title to this property to Wellhouse
& Sons, at the same time surrendering to the latter the
bond for titles covering the same property theretofore
given by Wellhouse & Sons to the Stewarts, and on the
same day the Stewarts transferred and assigned to Well-
house & Sons a certain bond for titles which they had
previously acquired from M. J. Ivey, covering the re-

mainder, or a one sixth interest in the property in controversy. On November 25th, 1891, Mrs. Kiser (who was formerly Mrs. M. J. Ivey, Ivey being dead and having left no children) executed to Wellhouse & Sons, in compliance with the provisions of the bond for titles from Ivey to the Stewarts and transferred by the latter to Wellhouse & Sons, a warranty deed conveying the one sixth interest covered by that bond. It further appeared that on February 2d, 1892, Wellhouse & Sons executed to the Union Paper Mill Company a deed conveying to it this property. All of these conveyances purport to have been made for a valuable consideration, were duly recorded, and it is upon this chain of title that the Union Paper Mill Company bases its claim. During the time the Stewarts owned the paper mills, they conducted the business under the name of. the Stewart Paper Company. The application for charter by the Stewart Paper Manufacturing Company prayed, and the charter granted thereon provided, that the Stewart Paper Manufacturing Company be incorporated with a capital stock of thirteen thousand dollars, with the privilege of increasing the same to twenty-five thousand dollars, each reciting " which amount of thirteen thousand dollars in lands, machinery, water-power, money, other material and property, is fully paid in"; and also providing that the chief place of business of the corporation should be at Rockdale Paper Mills on Yellow river, near Conyers in the county of Rockdale, and that.the aim and object of the corporation was to purchase and otherwise procure a location, land, material, necessary power of water, steam or other kinds, fixtures, machinery and other property and effects that may be useful or needful in the manufacture of books, news, manilla, wrapping and all other kinds of paper. It does not appear that the corporators named in the charter ever met, organized thereunder, or in pursuance of

the powers and privileges thereby granted and conferred ever made any contracts or had dealings of any character with any person whomsoever. There was no conveyance of the property in question to the corporation in its corporate name or otherwise. It seems that the Stewarts continued to run and operate the mills owned by them in the manufacture of paper in the same manner after as before the grant of the charter, and that in running and operating their business, for a portion of the time they used the name The Stewart Paper Company and at other times that of The Stewart Paper Manufacturing Company. During the time they were engaged in running and operating the property, the Stewarts, for material necessary in the conduct of their business, contracted a debt with the plaintiff in execution. For the non-payment of this debt suit was brought and the judgment recovered upon which this execution issued. Prior to the date of the deed from the Stewarts to Wellhouse & Sons, the latter caused an examination of the records in Rockdale county to be made to ascertain whether there were any liens, incumbrances or other conveyances of record which in any way impaired the title of the Stewarts to the property in question. There were none such, and finding the chain of title into the Stewarts regular, they purchased the estate and paid them a full consideration therefor. The Union Paper Mills Company was incorporated after the conveyance to Wellhouse & Sons, and it took by virtue of the conveyance from Wellhouse to it. The main point of contention upon the part of counsel for the plaintiff in error was, that the court erred in charging the jury, in substance and to the effect, that the mere fact that the applicants for the charter of The Stewart Paper Manufacturing Company were the owners of the property involved in this litigation, and that they recited in their petition for charter that thirteen thousand dollars of

the capital stock of the corporation had been paid in, in lands, water-power, machinery, etc. (as described in the body of said application), would not have the effect to vest the legal title to the property thus referred to in the application for charter in the corporation; but that in order to divest the owners of their title it was necessary that there should be an organization of the company and a conveyance by the owners of the property to the corporation. This charge is excepted to as being an erroneous statement of the law. We do not think this contention of the plaintiff in error well founded. A formal conveyance of real property is necessary to a transmission of title in this State, unless the owner thereof so deal with it as to vest an equitable interest in another and raise an estoppel against the assertion of title upon his part. In the first place, in order to make a grant effective, there must be such description of the premises as that the same is capable of application to a particular subject. If we were at liberty to regard this application for the grant of a charter and the consequent grant of the charter thereon as sufficient to operate as a formal conveyance, there is no such identification of the thing conveyed as would enable the court to determine what particular land, what particular water-power or what particular machinery was intended to be conveyed thereby. These incorporators may have owned a half-dozen mill sites, and the general description in this application for charter would be equally applicable to each of them. So that the grant would be void for uncertainty, treating it even as a conveyance. In the second place, a corporate existence was essential to the acquirement of real estate. No title could by possibility pass to this corporation until by organization it had attained an actual entity. As it stood, upon the moment of the grant of its charter it was a species of legal *fœtus*—a corporate body *in embryo*. Organization

was essential to its endowment with the vital principle. Without this it could do no corporate act, could receive no corporate property, could incur no corporate liability, and against it no corporate judgment could be legally rendered. If individuals assumed to use its corporate name for the conduct of their own business, they might render themselves liable in suit against them as individuals; but there being no corporation, it follows that no judgment could be rendered against a corporation. We recognize the distinction between corporations *de jure* and corporations *de facto*, and that, with reference to the latter, where the corporators have assumed to act under a corporate name, they cannot by reason of informalities in the execution of corporate powers escape liabilty for corporate acts; but nothing of that kind occurs in this case. The court simply charged the jury as to the legal effect of the act of incorporation upon the title to this property in the hands of individual corporators, and we think his instructions to the jury were correct.

We do not mean to say that a case might not arise in which corporators by the terms of their application for a charter might not so far commit their property as assets of the corporation as that if, upon its organization, the corporation did in fact take possession and control the property, and, upon the faith and credit of property thus acquired and thus controlled, incurred liabilities, the courts would treat such property, as to such debts, as the property of the corporation, not upon the theory that the corporation had a legal title to the estate, but upon the theory that the corporators themselves would be estopped to set up title in themselves as against a *bona-fide* creditor upon the faith of their apparent dealings with their property. But this is not a contest between the corporators themselves and a person claiming to be a creditor, as appeared in *Stewart Manufacturing Company* v. *Rau,* 92 *Ga.* 511. It is a contest between a

creditor of the alleged corporation and a *bona fide* purchaser, without notice, from the corporators. That Wellhouse & Sons were *bona fide* purchasers of this property is not open to serious debate under the facts of this case, is clear. Whether the grant of this charter carried into the corporation any property of the corporators at all is one thing, and whether it carried into the corporation the property of the corporators in such form as to legally charge a purchaser with notice, is entirely a different thing. Let us assume for the purposes of this discussion that this charter could operate as a conveyance, and that being a public record, a person was bound to take notice thereof. From an inspection of this record, what facts would be disclosed to an intending purchaser which would apprise him that the particular property in controversy was the property intended to be carried into the corporation by the application for charter? There is nothing in the petition or charter to identify it, either in point of value or character, as the property now in question. As a matter of fact, the undisputed evidence shows that Wellhouse & Sons made diligent inquiry into the status of this property before they purchased, and found nothing upon the record which would arouse the slightest suspicion in the mind of the most prudent and careful person suggestive of the fact that the Stewarts from whom they purchased had at any time parted with their title to this property. They paid full value for it, and indeed there is no circumstance connected with the entire transaction which casts the slightest suspicion upon the *bona fides* of their conduct. It is clear that as against such a purchaser title would not pass by operation of the estoppel invoked in this case, whatever might be its effect as against the corporators.

Exception was taken to the exclusion by the court of certain answers to interrogatories addressed to the plain-

tiff, who testified that he had extended this credit to the Stewart Paper Manufacturing Company upon the faith of information derived by him from a mercantile agency, to the effect that the Stewart Paper Manufacturing Company was a corporation in good standing and worthy of credit. Whether these declarations of this mercantile agency would be admissible as against anybody, we do not deem it necessary to decide; but certainly they are not admissible in a controversy of this character, where it is not shown, nor sought to be shown, that this purchaser against whom an equitable estoppel is invoked bought with notice, either express or implied, of the plaintiff's debt or the circumstances under which it was incurred.	*Judgment affirmed.*