## McCANDLESS et al. v. INLAND ACID COMPANY.

1. A deed to designated persons " as incorporators " of a named " company " which had not in fact been incorporated did not, upon the granting by a superior court of a charter to a company of like name and composed of these same persons, ipso facto operate to pass to such company the legal title to the property in the deed described.

2. When an entry is made upon the docket of a justice's court with the design of setting forth the terms of a judgment in favor of the plaintiff in an action upon a promissory note, and such entry in no manner specifies any amount, either as principal or interest, the same is void for uncertainty and there is no valid judgment.　Merely placing certain figures with a dollar mark ($) prefixed thereto after the words " suit on note " in the statement of the case upon such

docket does not indicate with absolute certainty the principal of the note sued on.

3. A judgment is not void merely because it was rendered upon a contract infected with usury, nor is a sheriff's deed executed in pursuance of a sale made under such a judgment tainted with the usury in the original cause of action.

4. A constable may, after making an entry of nulla bona upon a justice's court execution issued outside of the county of his residence, lawfully levy the same upon land of the defendant in execution situated in that county, if the latter is a resident thereof when such entry is made, although there is upon the execution no entry of nulla bona by a constable of the county in which it was issued. It did not, in the present case, affirmatively appear that the defendant in execution was a non-resident of the county in which the entry of nulla bona and the levy following the same were made.

Argued October 6, — Decided November 28, 1900.

Equitable petition. Before Judge Janes. Haralson superior court. July term, 1900.

*Edwards & Ault,* for McCandless *et al.*
*A. T. London, W. F. Turner,* and *E. S. & G. D. Griffith,* contra.

LUMPKIN, P. J. The Inland Acid Company brought, in the superior court of Haralson county, an action against J. M. McCandless and others, for the recovery of a lot of land, the mineral interests in three other lots, and for injunction, the cancellation of certain deeds, and other relief. The defendants in their answer disclaimed title to the lot first indicated, and at the trial of the case in the superior court at its January term, 1899, the entire controversy seems to have been resolved into a determination of the question whether or not the plaintiff was entitled to recover the mineral interests in the three lots, and, as a consequence, to a cancellation of the deeds described in its petition. Relatively to the adjudication of this question, the plaintiff stood squarely upon a claim of legal title to the mineral interests, and did not in its petition set up, or by its evidence attempt to show, any equitable ground for recovery. The case came to the March term, 1899, of this court, upon a bill of exceptions sued out by the defendants, in which error was assigned upon the direction by the trial court of a verdict in favor of the plaintiff. See 108 *Ga.* 618. It appeared from the record then before us that both sides claimed title to the property in dispute, viz., the aforesaid mineral interests, under one M. T. Singleton. In the official report preceding the opinion of this court it is stated that the action was " based upon a deed to

the plaintiff from one Singleton, dated January 9, 1895, and re-
corded July 9, 1897;" also that "Defendants relied upon a deed
to the property in question, from the sheriff to one of them, dated
and recorded on March 21, 1896, and made in pursuance of a sale
under executions issued upon judgments against Singleton, ren-
dered January 22, 1896." The Singleton referred to was M. T.
Singleton. We reversed the judgment on the ground and for the
reasons set forth in 108 *Ga.*, supra. A second trial in the supe-
rior court was had at the July term, 1900, thereof, the plaintiff
having in the meantime filed an amendment to its original petition,
alleging that, for various reasons which were fully set forth, the
judgments upon which were issued the executions under which the
sheriff's sale was had were null and void. The defendants de-
murred to specified paragraphs of the plaintiff's amendment. The
demurrer as to all of them save two was overruled, and as to these
two it was sustained. After the close of the testimony, the court
again directed a verdict for the plaintiff, and the defendants sued
out a bill of exceptions, assigning error upon this action, and also
upon the refusal to sustain in toto its demurrer to the plaintiff's
amendment. By a cross-bill of exceptions the latter alleged error
in adjudging that the demurrer was, as to the two paragraphs of
the amendment hereinbefore indicated, well taken. We will first
discuss the exception of the defendants below to the direction of
the verdict, and then dispose of the only remaining point made in
their bill of exceptions which, in the view we take of the case, it
is material for us to decide. After so doing we will deal with the
questions raised by the cross-bill of exceptions. Such additional
facts as should be set forth will be stated as we progress.

1. At the trial now under review both sides still claimed title
under M. T. Singleton, the plaintiff relying upon a deed from him
presently to be mentioned, and the defendants upon the sheriff's
deed to which reference is made above. The plaintiff, according to
the original bill of exceptions, introduced in evidence "a deed from
M. T. Singleton to M. T. Singleton, J. W. Singleton, Chas. H. Clark,
and George H. Clark, incorporators of the Inland Acid Company,
conveying the property in dispute, dated January 9th, 1895, and
recorded February 9th, 1897." It also introduced in evidence its
charter, granted by the superior court of Polk county, March 13th,
1895, and based its right to a recovery exclusively upon these two

documents.   It did not put in evidence any conveyance to the com-
pany from the four persons named as grantees in the deed of M. T.
Singleton, nor any other muniment of title.   The defendants' bill
of exceptions, though not in the clearest and most specific manner
possible, does, with sufficient distinctness to be understood as·to this
matter, present the point that the plaintiff did not by the introduc-
tion of the Singleton deed and its charter make out a prima facie
case; and we think the point is well taken.   It will, of course, be
conceded that the plaintiff was not entitled to recover unless it
showed title in itself, and certainly this was not done by exhibiting
its charter in connection with the Singleton deed.   Unquestion-
ably, it must stand or fall on that deed; and even if the above-
quoted recital of its contents is to be regarded as meaning that the
four grantees were in the instrument designated " as incorporators "
of the Inland Acid Company, the instrument fell far short of pass-
ing the title to a company not in existence at the time of its exe-
cution.   The company could not, as such, obtain title to property
until after it came into being as a legal entity ; in other words, not
until it became a " person " capable in law of exercising the rights
of acquisition and ownership.   In principle, the decision of this
court in *Rau* v. *Union Paper Mill Co.*, 95 *Ga.* 208, is controlling
upon the question in hand.   On pages 212 and 213, Mr. Justice
Atkinson said: " In the second place, a corporate existence was es-
sential to the acquirement of real estate.   No title could by possi-
bility pass to this corporation until by .organization it had attained
an actual entity.   As it stood, upon the moment of the grant of
its charter it was a species of legal foetus — a corporate body in em-
bryo..   Organization was essential to its endowment with the vital
principle.   Without this it could do no corporate act, could receive
no corporate property, could incur no corporate liability, and against
it no corporate judgment could be legally rendered." The doctrine.
thus announced is well supported by the following from Thompson
on Corporations:   It "is obviously a sound conclusion that a trans-
fer of property from an unincorporated association to a corporation
composed of the same members may be worked by a legislative en-
actment, accepted, sanctioned, and given effect to by the parties
between whom the transfer is made.   But if the legislature, in an
act of incorporation, intends that the property of the co-adventur-
ers who are incorporated shall be vested in the corporation without·

a deed of conveyance, it will of course say so in direct language. Thus, an act incorporating tenants in common, to enable them to carry on more conveniently a common purpose, does not of itself vest in the corporation a title to the land previously owned by the individuals and used by them for the same purpose. . . So, the organization of a voluntary loan association, under a statute, does not transfer the property of the associates to the corporation without a formal conveyance, because the statute does not say so. And in general, a clause in a charter declaring that the corporators are constituted a body corporate for a specified purpose does not give them any rights of property with respect to such purpose. It only confers corporate existence, and limits the purpose for which such existence is given. If lands are necessary for carrying the purpose into effect, they must be acquired under some other authority, grant or conveyance." See vol. 5, § 5794, and cases cited.

That there may be a statutory investiture of title in a corporation created by act of the legislature, in the event the General Assembly expressly declares such a purpose, was recognized by this court in *Wardens of Christ Church* v. *Savannah*, 82 *Ga.* 656. But it is to be observed that not only does the charter with which we are now dealing entirely fail even to suggest such a scheme, but it was one granted by a superior court under and by virtue of statutory provisions which clearly do not contemplate anything more than that corporate existence may be conferred upon an unincorporated association of individuals who apply for a charter. See Civil Code, § 2349 et seq. We therefore hold that the court ought not to have directed a verdict for the plaintiff, and base our ruling upon the simple proposition that so doing was erroneous for the reason that inasmuch as the plaintiff failed to show title in itself, it did not establish a prima facie legal right to recover.

We deem it proper, before dismissing this branch of the case, to state what follows: An examination of the bill of exceptions in this case sent to the March term, 1899, of this court, discloses that the deed upon which the plaintiff relied at the first trial in the superior court was a "deed of M. T. Singleton to M. T. Singleton, J. W. Singleton, Chas. H. Clark, and Geo. H. Clark, incorporators of the Inland Acid Co., dated Jan. 9th, 1895, and recorded in Book Q, page 329, July 9th, 1897." This description as to date of the execution and names of parties is identical with that appearing in the

original bill of exceptions now before us.  There is a discrepancy in the dates relating to recording.  It is quite probable that the same is susceptible of explanation, and that as a matter of fact the same deed was introduced at both trials in the lower court.  Be this as it may, it is certain that the deed described in the old bill of exceptions no more operated to pass title to the Acid Company than did that described in the bill of exceptions now under consideration. We might, therefore, have based the judgment which we rendered at the March term, 1899, in part upon the ground that the deed relied upon by the plaintiff did not show title in it, had the plaintiffs in error then presented this point.  No such point was, however, made in the bill of exceptions, and we therefore naturally, as did the counsel on both sides, treated the deed as one conveying title to the plaintiff, and accordingly dealt only with the question whether or not, considered as such, it was entitled to preference over the sheriff's deed relied upon by the defendants.  The course thus pursued by us probably led the reporter into characterizing the deed as one to the plaintiff.    The point passed over before is now decided because, as already stated, it is this time sufficiently presented.

2.  The sheriff's deed upon which the defendants based their claim of title was made under several executions issued from the justice's court of Fulton county.  Some of them were against M. T. Singleton and W. M. Pendleton, and the others against Singleton alone. In the amendment to the plaintiff's petition referred to above, the sale by the sheriff was attacked as void on various grounds.  In one of the paragraphs of that amendment, the demurrer to which was overruled, it was alleged that "the pretended judgments" upon which were issued the executions under which that sale was made were void, "because they are no judgments at all, but are simply the signature of the Notary Public & ex-off. J. P. to a blank for a judgment printed in the docket, and does not specify any amount of principal, or interest, or cost, in the case, all blanks in form being left unfilled, except a tabulated list of costs in print allowed to be charged usually, for the court to fill out in his judgment, as the case may require, as shown by certified copies, or transcript of said docket in said cases, hereto-attached, marked exhibit 'B.' "  The exhibit disclosed the manner in which the judgment entries were made upon the docket of the justice's court, and copies of these entries, conceded to be correct, were admitted in evidence.    The

following, for all needful purposes, sufficiently indicates the character of them all :

JUSTICE'S COURT 1332 DISTRICT G. M., JAN. TERM, 1896, FULTON
Co. GA.

| Plaintiff's Attorney. | Parties. | Style of Case. |
|---|---|---|
| ............................ | J. B. Redwine. | Suit on note. |
| No. 45 | vs. | $36.00. |
| Defendant's Attorney. | M. T. Singleton. | |

Summons issued 2nd day of January, 1896.     Constables entry: Personal service.    Continuances.........................
Judgment in favor of plaintiff against defendant for principal......
Interest............Interest after judgment at ...... per cent.........
Attorney fees............. Justice's costs:— Original summons, 35c.
...... subpœnas ............ Trial 35c.; Judgment 35c......,Constable's cost:— Serving one copy 35 ........ Additional copies at 30c.
each; summoning......... witness.........; Attending Court, 35c.
This 22nd day of January, 1896.

                        [Signed]   J. E. Nabel, N. P. Ex-off. J. P.
Execution issued 28th day of January, 1896.

    The question therefore is, does an entry in this form upon the docket of a justice's court evidence the rendition of a valid judgment ? We think not. It is the duty of justices of the peace: "To keep a docket of all causes brought before them, in which must be entered the names of the parties, the returns of the officer, and the entry of the judgment, specifying its amount and the day of its rendition." Civil Code, § 4082 (6). In *Ramsey* v. *Cole*, 84 *Ga.* 147, this court held that the original summons issued in an action in a justice's court, though a judgment had been in fact entered thereon, was not admissible to prove its rendition, but that "the judgment should have appeared on the justice's docket." In *Scott* v. *Bedell*, 108 *Ga.* 209, Mr. Justice Cobb said: "The entries upon the docket of the justice of the peace are in the nature of minutes of a court, and every fact transpiring in connection with cases tried in his court, essential to the validity or regularity of the judgment rendered, should be entered upon the docket." In support of this, he cited a number of the decisions of this court, and added: "When a justice renders a judgment in a case tried

by him without a jury, the judgment should· be entered on the docket." It can not, then, be doubted that resort must be had to the docket entry, and to it alone, in order to determine in a given case whether or not there was a valid and lawful judgment.

Our present inquiry is therefore restricted to simply this: Is the docket entry now under consideration sufficiently full and· explicit to show that a judgment for any specified amount of either principal or interest was rendered in favor of John B. Redwine against M. T. Singleton? Certainly there was neither specification of any sum as interest, nor reference to anything on the face of the· docket by which the amount of interest which had accrued up to the date of the judgment could be ascertained. Was it, then, a good judgment for $36.00 as principal? In support of the contention that it was, counsel for the plaintiffs in error cited *Gunn* v. *Tackett*, 67 *Ga.*725, and *Collins* v. *Camp*, 94 *Ga.* 460. It appeared in the former of these cases that " on the left hand side of the page" of the justice's docket there was " a statement of the case," and on the right the following: "plea entered May 3d, 1879; principal $100.00; interest after deducting credit up to suit, $35.50; judgment for plaintiff for principal, interest, and costs." It was held that an itemized statement of the costs was not essential to the validity of the judgment, and that, so far as related to principal and interest, the amounts were sufficiently indicated. This latter ruling was doubtless based upon the maxim: "That is certain which can be made certain," and upon the fact that the docket itself showed the precise amounts of principal and interest for which the suit was brought. We do not, therefore, think this case pertinent to our present question. The *Collins* case does, apparently, afford some support for the position taken by counsel for the plaintiffs in error. In that case, the justice's docket showed "the names and order of the parties, . . the fact that the suit was founded upon a note," and the following judgment entry: "Judgment in favor of..................against...................for principal $57.45. Interest 8% from date of note............ Interest after judgment at 8% per annum............... Attorney's fees 10% on principal and interest...., ................... Cost............" We do not understand the decision in that case to amount to more than an adjudication that the judgment was a good judgment for the principal sum specified therein, with interest after judgment, and for ten per

cent. upon the principal as attorney's fees, and for costs. It would certainly have required straining to hold that it was a judgment for any amount of interest accrued before the date of the judgment, or for attorney's fees thereon; and it does not appear that the court so held. The ruling that resort to the execution might be had for the purpose of solving "any ambiguity of the docket as to the party in whose favor, or the party against whom, the judgment was rendered," was certainly going far enough upon this line. It was insisted in the argument here that the executions, which were in evidence at the trial in the court below, could be properly looked to in order to render certain the amounts for which the judgments were rendered. We can not assent to the correctness of this proposition, and are unwilling to extend the ruling just referred to so as to allow further references to executions issued from justice's courts for the purpose of ascertaining what ought to appear in the judgment entries. Indeed, it was not really necessary to go as far as we did in the case under examination. As the action was upon a promissory note and the judgment purported to allow interest thereon from its date, it must have been a judgment in favor of the plaintiff; for it is difficult to conceive how a defendant would be entitled to recover interest upon his own contract. Giving the decision in the *Collins* case the fullest scope allowable, we would have to go still another step to make it authoritative upon the question now for determination. The figures "$36.00," following the words "Suit on note" in the statement of the case, may have been, and in all probability were, placed there to indicate that the note was for the principal sum of thirty-six dollars, but this is not necessarily and inevitably true. A copy of the note itself, attached to the original summons, was in evidence; but it was not, as was insisted, proper to refer to it for light upon the question as to what amount was sued for. This point is fully covered by the decisions cited supra. Looking, therefore, as we must do, solely to the docket, the inference that the figures "$36.00" were intended to represent the total amount of both principal and interest apparently due upon the note when the suit was brought is, beyond doubt, possible. At any rate, there is surely no absolute certainty about it. In order, then, to hold that this was a good judgment for the principal sum of thirty-six dollars, we would have to make the above-quoted maxim read: "That is certain which can be made extremely prob-

able." We have no authority to thus modify a rule which has come down to us unaltered through all the ages.

Counsel for the plaintiffs in error also cited *Mitchell* v. *Addison*, 20 *Ga.* 50, in which it was held that when a jury in a justice's court returned a verdict in favor of the plaintiff for "principal, interest, and costs," it was to be presumed that the jury meant, "by the word principal, the principal sued for." It is one thing to interpret a verdict in the light of the pleadings, which is the settled rule, and quite another to violate a positive statute by attempting to ascertain the amount of a judgment rendered by a justice of the peace by looking elsewhere than upon the docket of his court.

Our conclusion, therefore, is that the so-called judgments upon which the sheriff's sale was based were void for uncertainty, and that the sale was accordingly a mere nullity. .

3. Upon the demurrer filed by the defendants below, the court struck a paragraph of the plaintiff's amendment attacking the judgments above mentioned on the ground that they were founded on contracts infected with usury. This did not, even if true, render the judgments void. Had they been otherwise free from objection, they would surely have been good as between Redwine and Singleton, and the plaintiff, though it might have a deed from Singleton which was older than the judgments, had no right to attack them on this ground. Even if the contracts on which the judgments were based were usurious, this did not taint with usury the sheriff's deed. *Owen* v. *Gibson*, 74 *Ga.* 465.

4. The remaining paragraph of the plaintiff's amendment which the court struck alleged that the executions under which the sheriff sold were "illegal and void, because there was no entry by a constable of Fulton county, where such executions were issued and where the defendants therein resided, of due search made and no personal property to be found to satisfy the debt, and the only entry made thereon was by a constable of Haralson county, when there was personal property of the defendants in said execution in Fulton county, subject to said executions, sufficient to satisfy the same." As will be seen, this paragraph did not unequivocally aver that the defendants in execution were domiciled in Fulton county when the entries of nulla bona and the levies based thereon were made. The language employed may mean no more than that the defendants in execution, both Singleton and Pendleton, "resided"

in Fulton county at the time the executions were issued. There is no affirmation that Singleton continued to thereafter reside in that county, or negation of his removal to Haralson county before the making of the entries of nulla bona. For aught that is alleged, he may have been residing therein when those entries were placed upon the executions. Therefore, under the rule that pleadings must be construed most strongly against the pleader, the paragraph in question is without merit. Whether, under section 4167 of the Civil Code, a constable may or may not, solely upon the strength of an entry of nulla bona made by himself, lawfully levy upon land lying in his county which belongs to a non-resident defendant in execution, it can hardly be doubted that when the latter is a resident of that county, the constable may, by virtue of such an entry, make such a levy, although the execution was issued in another county and had upon it no entry of nulla bona by a constable thereof. Inasmuch as personalty, in legal contemplation, follows the person, constables of the county in which the owner resides are manifestly the proper officials to search for it when needed to satisfy judgments against him.

*Judgment on main bill of exceptions reversed; on cross-bill affirmed. All the Justices concurring.*