FLORIDA COCA COLA BOTTLING CO. v. RICKER et al.

1. In order to admit secondary evidence, it must appear that the primary evidence, for some sufficient cause, is not accessible to the diligence of the party tendering such evidence. The question of diligence is one of sound discretion in the court.

(a) In this case there was no error in refusing to admit secondary evidence of a written assignment.

(b) If an assignee sent a written assignment to another State for record, and left it there with no effort to obtain its return, it was not an abuse of discretion to hold that this did not sufficiently show that it was inaccessible to the assignee, so as to admit parol evidence of its contents at his instance.

2. Where two persons took a written assignment of certain choses in action to themselves as individuals, a corporation not then in existence, but subsequently chartered with the assignees as corporators, could not sustain a common-law action brought in its own name as the owner of such choses in action by offering to show by parol that the assignees acted as its agents in taking the assignment.

3. An action dependent on the ownership by the plaintiff of a legal title to choses in action can not be sustained by parol evidence tending to show that the plaintiff is the equitable owner of such choses.

4. There was no error in granting a nonsuit.

JUNE 15, 1911.

Attachment. Before Judge Felton. Bibb superior court. April 19, 1910.

On March 18, 1908, the Florida Coca Cola Bottling Company sued out an attachment in the superior court of Bibb county against E. A. Ricker, on the ground that the defendant was a non-resident. It was levied by serving a summons of garnishment on the Commercial & Savings Bank of Macon. During the term of the superior court to which the writ was made returnable, the plaintiff filed a declaration in attachment, alleging the foregoing facts, and also in substance as follows: On March 15, 1907, H. F. Haley and T. C. Parker, "acting for and in behalf of the Florida Coca Cola Bottling Company, purchased from the said E. A. Ricker, doing business as the Jacksonville Coca Cola Bottling Company, a certain coca cola bottling plant, especially including open accounts. Amongst other open accounts due to the said E. A. Ricker, and so purchased by your petitioner from the said E. A. Ricker," were two specified accounts amounting to $781 and $150, respectively. "Notwithstanding the fact that your petitioner had bought said accounts, the said E. A. Ricker, after having sold the same to petitioner and after the same had become the property of peti-

tioner," collected them on March 19 and 29, respectively. The accounts were the property of the plaintiff, and when so collected Ricker became indebted to it for the amount of such collections. After the summons of garnishment, based on the attachment, had been served on the Commercial & Savings Bank of Macon, Georgia, as garnishee, the Commercial Bank of Jacksonville, Florida, filed a bond with security in the superior court of Bibb county, reciting that the garnishee held $3,375 which it had collected upon a draft drawn by Ricker and payable to the order of the Commercial Bank of Jacksonville, and that the Commercial Bank claimed the money thus held. The condition of the bond was that the Commercial Bank of Jacksonville should pay to the plaintiff the sum that might be found due to it by Ricker, upon the trial of any issue that might be formed upon the answer of said garnishee, or that might be admitted to be due in said answer if untraversed. The plaintiff contends that the filing of this bond alone did not operate as a sufficient claim. The fund in the hands of the garnishee was paid to the Commercial Bank of Jacksonville, upon the filing of this bond. That bank asserts some sort of claim, or pretended claim, against the funds on the ground that Ricker was indebted to it and deposited as collateral security a bond, which was forwarded for collection. Plaintiff alleges that if there was any valid claim on the part of the Jacksonville Bank, it was for less than the amount of the fund which was in the hands of the garnishee. "Petitioner has no actual knowledge of the facts recited in the foregoing paragraph; and although it has repeatedly requested the attorneys of the Commercial Bank of Jacksonville to disclose what amount of indebtedness was claimed by the said bank against said bond, yet petitioner has been unable to get this information, and is now unable to allege the amount of the debt held by the Commercial Bank of Jacksonville, if any debt is so held. It is entitled to know the amount of the debt so claimed, so that it can tender such amount and release the bond.". It alleges that the title "to said bond and coupons" was in Ricker at the time of their payment, and that the money paid to the Commercial & Savings Bank was his money and subject to garnishment. Plaintiff prayed discovery from the Jacksonville Bank, and that it should have judgment against Ricker; that in the event it should be determined that no claim had been filed by the Commercial Bank

of Jacksonville, plaintiff should have judgment against the Commercial & Savings Bank of Macon, Georgia, as garnishee; and in the event it should be determined that a claim had been filed by the Commercial Bank of Jacksonville, plaintiff should have a judgment against Ricker, and against the American Surety Company of New York, as surety on the bond filed by the Jacksonville Bank.

It does not appear that any service of this declaration was made, though it was stated in the bill of exceptions that Ricker appeared and pleaded.

On the trial, evidence was introduced to show that on March 15, 1907, Ricker assigned to Haley and Parker certain enumerated personal property, including books of accounts, notes and open accounts, and other assets of the Jacksonville Coca Cola Bottling Company, the "firm name" under which he was doing business; that one of these accounts, for $781, had been paid to the Jacksonville Coca Cola Bottling Company on March 21, 1907, by a check payable to the order of the last-mentioned company and dated March 19; and that another account, for $150, had been paid by a check dated March 29, 1907, payable to the order of Ricker, indorsed by him, and stamped paid April 3. Haley was introduced as a witness, and testified that the Florida Coca Cola Bottling Company was chartered on or about April 11, 1907, and as to this there was no conflict. He further testified that after the assignment from Ricker to him and Parker, they made a written assignment, which he called a deed, to the Florida Coca Cola Bottling Company, "of the things we bought from Ricker." In attempting to account for the non-production of the paper, he testified, among other things, as follows: "I filed that deed in Jacksonville. Sending it down for filing was the last I have seen of it. The original never came back into your [Malcolm D. Jones's] office that I know of." When questioned by his counsel he said he turned the paper over to Malcolm D. Jones. Mr. Jones was then introduced as a witness, and testified that he prepared the conveyance from Haley and Parker to the Florida Coca Cola Bottling Company, and had the paper in his possession; that about that time he was taken sick with fever; that he was not able to swear positively what became of the paper; that he had made diligent search in his office, and could not find it; and that he

had asked Haley to make search for it wherever he thought he could find it. Haley was then recalled to the stand, and testified that he had made the search which Mr. Jones had requested him to make. When questioned by the court, he answered that he had sent the paper to Florida for record. The court then asked, "And you have not seen it since?" To this he answered, "I have not seen it since, other than that I am positive I carried it to Mr. Jones. When it came back from record I carried it to Mr. Jones and gave it to him. I am positive of that. I feel very positive that I got back the original from Jacksonville, certified to as having been recorded. It is three years ago, and when we looked for the paper I couldn't find it at all, and I made it a practice of carrying it to him [Malcolm D. Jones] when anything comes up. I have made diligent search everywhere it is likely to be found. Once when the case came up before, and yesterday again. I have never applied to the clerk in Jacksonville, Florida, for the paper. I was so positive Mr. Jones had it. When it came up before, Mr. Jones was ill, and I was positive he had it. Absolutely I carried all my papers to the office of Malcolm D. Jones. He has had full charge of all this transaction, and I turned over all the papers to him, and have never received that paper back from him." He was again asked, "Did you send the paper to Jacksonville, the transfer from Haley and Parker to the Florida Coca Cola Bottling Company?" To this he answered, "I don't think that I did. Malcolm D. Jones was getting up the bonds. He had entire charge of the bond matter. I don't know whether I sent it, or he, or how it was fixed." The presiding judge held that the foundation for the introduction of parol evidence as to the contents of the written transfer from Haley and Parker to the Florida Coca Cola Bottling Company had not been sufficiently laid, and rejected parol evidence as to its contents.

Parol evidence was also offered on behalf of the plaintiff for the purpose of showing that the Florida Coca Cola Bottling Company was organized solely on the assets of the Jacksonville Coca Cola Bottling Company, purchased from Ricker by Haley and Parker; that they were acting as agents for the Florida Coca Cola Bottling Company in making the purchase, and this was understood by Ricker; that the company issued its stock to Haley and Parker for such assets, and it was the company's money or bonds which went

to pay Ricker; that all the assets which Haley and Parker had bought from Ricker were "turned over to the Florida Coca Cola Bottling Company;" and that Ricker was fully acquainted with the fact that Haley and Parker were buying the assets of the Jacksonville Coca Cola Bottling Company, not for themselves, but for the Florida Coca Cola Bottling Company, a corporation not then chartered, but for which an application for charter was pending, and which was afterwards chartered. This evidence was ruled out. Upon motion, a nonsuit was granted. The plaintiff excepted to this ruling, and to the rulings as to the rejection of evidence.

*Miller & Jones*, for plaintiff.

*Lane & Park, G. C. Gibbs*, and *E. P. Mallary*, for defendants.

LUMPKIN, J. (After stating the foregoing facts.)

1. The plaintiff brought suit against the defendant to recover the amount which the latter had collected on open accounts against certain debtors. The accounts were originally due to the Jacksonville Coca Cola Bottling Company. They were assigned in writing by the defendant, Ricker, to H. F. Haley and T. C. Parker. The assignment recited that Ricker was "trading under the firm name of the Jacksonville Coca Cola Bottling Company." No written assignment from Haley and Parker to the plaintiff was produced. It was sought to supply its absence by parol evidence.

Section 5759 of the Civil Code of 1910 provides that in order to admit secondary evidence, it must appear that the primary evidence, for some sufficient cause, is not accessible to the diligence of the party. And section 5859 declares that if the paper is lost or destroyed, proof of the fact to the court will admit secondary evidence. The party is a competent witness to this point. The question of diligence is one of sound discretion in the court. The testimony of Haley by which it was sought in this case to lay a foundation for introducing secondary evidence of the contents of the written assignment to the plaintiff, was indefinite, confused, and contradictory. He testified at one time that he sent the paper to Florida for record, and had never received it back, and that he had made no application for it to the clerk in Jacksonville to whom he had sent it. At another time he testified that he was positive that he had received it back and had delivered it to the plaintiff's attorney; but it is evident that this was a mere conclusion,

because it was his practice to deliver papers to such attorney. Later in his testimony, when again asked if he sent the transfer from Haley and Parker to the plaintiff to Jacksonville for record, he answered that he did not think that he did, and "I don't know whether I sent it or he [Mr. Jones], or how it was fixed." The testimony of Mr. Jones showed that he prepared the paper, and about that time was taken sick with fever, and that he was not able to swear positively what became of such paper, but that he had searched for it in his office without finding it. It can not be held, under this testimony, that the presiding judge abused his discretion in holding that no sufficient foundation had been laid for the admission of parol evidence as to the contents of the assignment. It was argued in the brief of counsel for plaintiff in error that the evidence showed that the paper was sent out of the State, and that this would in itself furnish a ground for the admission of parol evidence of its contents. But a party can not send a paper beyond the jurisdiction of the State for the purpose of record, and, without any effort to have it sent back, claim that it is inaccessible to him, so as to admit secondary evidence. This is very different from a case where a paper is beyond the limits of the State and in possession of an independent third party, and not accessible to the diligence of the party offering secondary evidence; such as *Bowden* v. *Achor*, 95 *Ga.* 244 (22 S. E. 254), and *Miller* v. *McKinnon*, 103 *Ga.* 553 (29 S. E. 467).

2, 3. The plaintiff sought to prove by parol testimony that Haley and Parker acted as agents for it in making the purchase of the personal property and accounts from Ricker and taking an assignment to themselves in their own names. The plaintiff's evidence showed that at the time when this assignment was made the charter had not been granted and no such corporation existed. Haley and Parker were not at that time agents of a principal which did not exist, and an assignment to them individually did not, of itself, operate as an assignment to the corporation subsequently created. Other evidence was offered for the purpose of showing that the formation of a corporation was in contemplation; that a charter was granted not long afterward; that its bonds or money were used in making payment for the purchase from Ricker; and that Haley and Parker "turned over to" the corporation the assets which had been assigned to them. This and like evidence

was rejected. Had it been admitted, its only legitimate use would have been to show an equitable title in the corporation to the open accounts which it was claimed that Ricker collected after he had sold and assigned them.

At common law, with the exception of negotiable instruments, choses in action were not assignable. An exception was made in favor of the sovereign; and it has been said that if the debtor consented and promised to pay the assignee, the latter could bring an action. Tiernan v. Jackson, 5 Peters, 580. In equity, however, the rights of parties under assignments could be protected. Assignments of choses in action are now generally recognized, but, in the absence of statutory provisions, the assignee should sue in the name of the assignor, for his use. 11 Am. & Eng. Enc. Law, 1114. In this State choses in action are assignable in writing, and the assignee may sue in his own name. Civil Code (1910), § 3653; Turk v. Cook, 63 Ga. 681. A mere equitable assignment or interest, arising from paying for a chose in action, without written transfer, gives no right to sue upon it in the name of the equitable assignee. There may be cases where an equitable action can be brought, with proper pleadings and parties, and the rights of all persons interested determined, and this can be done in the superior court, where both legal and equitable rights are cognizable. Rivers v. Wright, 117 Ga. 81 (43 S. E. 499). But the present case was not of that character. It arose by attachment. The only defendant was Ricker. The declaration filed was the statutory declaration in attachment, with no process save the previously levied attachment, and apparently no other service. Save as the claimant became a party to the garnishment proceeding by filing its claim (Civil Code (1910), §§ 5282, 5289), no one was before the court as a party except the plaintiff and Ricker, who is stated to have pleaded to the merits. Haley seems to have represented the plaintiff; but Parker did not testify, nor does it appear what became of him. If a declaration in attachment can be used as an equitable petition with a view of settling equities among all the parties, there was no allegation of equitable ownership and no effort to have all parties appear and set up their contentions so as to be bound by one judgment. There was an allegation that if the claimant held the collection as a security, there was more than enough to pay the debt, and a prayer for discovery

from the claimant as to the amount which Ricker owed it and for which it held the debt sought to be subjected. But it does not appear to have been urged or the declaration served; and it could not be successfully contended that this was an equitable proceeding to set up rights under an equitable assignment.

4. The declaration in attachment alleged, that on March 15, 1907, Haley and Parker, "acting for and in behalf of the Florida Coca Cola Bottling Company," purchased from Ricker a certain bottling plant, including open accounts; that among other accounts due to Ricker "and so purchased by your petitioner," were two which were specified; that "notwithstanding the fact that your petitioner had bought said accounts, the said E. A. Ricker, after having sold the same to petitioner, and after the same had become the property of petitioner," collected them. The evidence introduced by the plaintiff showed that it was not in existence when Ricker sold and assigned the property to Haley and Parker, and therefore Ricker did not sell to it but to them, and the choses in action were assigned in writing to them, not to it. The case of *Colquitt* v. *Howard,* 11 *Ga.* 556, was cited. The legislature authorized the Mayor and Council of Columbus to lay off a portion of a street and of a common into "water lots" and to dispose of them. Persons who acquired such lots obtained from the legislature a charter. The act recited the history and condition of the company, and "in order to enable said Howard and his associates, owners of such water lots, to conduct their affairs, and to carry on their operations, with facility," declared that they were incorporated under a certain name and style, and were capable of having, holding, possessing, and enjoying lands, etc. Another section of the charter declared that the death of one or more of the directors or parties in interest should not prevent, hinder, or delay a sale or sales "of the said lots, or any of them, or any interest therein, by the survivors in the name of the corporation." It was held that the title to the property vested in the corporation, and that one of the tenants could not maintain a suit to enjoin a trespass on it, but the corporation alone could do so. It will be seen that the facts were peculiar. Tenants in common procured a legislative charter with power in the corporation to hold, possess, and sell the particular land referred to. In the opinion Nisbet, J., said: "Resisting the idea that the title vested in the corporation, coun-

sel rely upon the text of Angell & Ames, to the effect, that the mere incorporation of tenants in common does not vest the title, but a conveyance must be made by the individuals to the corporation. This is an incontrovertible proposition. But it contemplates a very different case from that before us." The doctrine of executed trusts does not serve to transfer the legal title to choses in action, without a written assignment, so as to authorize the person beneficially interested to bring a common-law action based thereon, in his own name. In some cases it has been said that corporators, by the terms of their application for a charter, might so far commit their property as assets of the corporation as to subject it to claims upon the corporation, "not upon the theory that the corporation had a legal title to the estate, but upon the theory that the corporators themselves would be estopped to set up title in themselves as against a bona fide creditor upon the faith of their apparent dealings with their property." *Rau* v. *Union Paper Mill Co.,* 95 *Ga.* 208, 213 (22 S. E. 146). In *Chicago Building & Manufacturing Co.* v. *Talbotton Creamery & Manufacturing Co.,* 106 *Ga.* 84 (31 S. E. 809), which was cited by counsel for plaintiff in error, a contract for the erection and equipment of a factory was made with a number of natural persons who agreed to obtain a charter for a corporation, in which each of such persons should be interested to the extent of his individual liability on the contract. The charter was subsequently obtained and the corporation organized, and the land was treated as belonging to it. The contractor completed the building contract and erected the building, equipment, and machinery for the use of the company. He sought to foreclose a lien on the property, and prayed process against the corporation, which filed a general demurrer. Construing the written contract, and considering the intention of the parties thereunder, it was held that the contractor had a right to proceed, and that his action was not subject to general demurrer. On the subject of the assumption by a corporation of liability under a contract by a promoter, see Taylor on Private Corp. § 79. This case is also different from those arising under contracts of subscription in connection with organizing a corporation.

It was contended that under the decision in *Kelly* v. *Strouse,* 116 *Ga.* 872 (43 S. E. 280), and certain cases preceding it, "when a court passes upon a motion for a nonsuit it decides only one

question, that is; do the allegation and the proof correspond?"; that, there was a correspondence between the allegata and probata in the present case; and that it was error to grant a nonsuit, whether or not, under the evidence adduced by the plaintiff, it was entitled to any recovery. From what has been said above, it will be seen that the evidence did not sustain the allegation of the declaration. But, speaking for myself, I have never been able to satisfactorily reconcile decisions of the character referred to with the unequivocal statement of the code, that "if the plaintiff fails to make out a prima facie case, or if, admitting all the facts proved and all reasonable deductions from them, the plaintiff ought not to recover, a nonsuit will be granted." Civil Code (1895), § 5347, Civil Code (1910), § 5942.

*Judgment affirmed. All the Justices concur.*