DECIDED MARCH 6, 1929.

*F. A. Tuten*, for plaintiff.

19370. HANEY & TINSLEY v. OWENS.

Decided March 6, 1929. Rehearing denied April 9, 1929.

*Henson & Barnett, Peek, Randolph & Wimberly,* for plaintiffs.
*J. H. Paschall, F. A. Cantrell,* for defendant.

Luke, J. Suit on a note was brought by Haney & Tinsley, a partnership, against H. E. Borders to the October term, 1926, of the justice's court for the 937th district G. M., of Gordon county; F. T. Powell, N. P. and ex-officio J. P., issuing the summons. On October 1, 1926, a summons of garnishment based on that suit was served on L. P. Owens. On October 16, 1926, judgment was rendered against Borders in the main case, and on June 18, 1927, the said justice rendered a judgment against the garnishee, reciting that the garnishee had failed to answer. The fi. fa. that the said justice issued on said judgment was introduced in evidence, with entry of levy on one Ford truck, the property of the garnishee. To this levy Owens interposed an affidavit of illegality, setting up that he made a complete answer to said summons of garnishment, denying indebtedness, at the November, 1926, term of court; that he had never been served with any notice of traverse of his said answer; and that the plaintiffs procured their judgment against him without traversing his said answer and without giving him any notice. Haney & Tinsley traversed the affidavit of illegality, and on November 19, 1927, G. O. Hightower, J. P. of the 973d district, G. M., sustained the affidavit of illegality. The plaintiffs appealed the case to the superior court, G. O. Hightower, J. P., certifying that he presided in the trial of the case, that he attested and approved the appeal bond, and that all of the accrued costs had been paid. On October 15, 1928, a jury, at the direction of the court, found for the affidavit of illegality and against the traverse. A motion for a new trial, based upon the general grounds and certain special grounds, having been overruled, Haney & Tinsley excepted.

L. P. Owens, the defendant in error, testified in part as follows: "I was served with a summons of garnishment in this case along in the fall of 1926. . . At the first term of the court I went over to Red Bud to court. Squire Powell and Squire Hightower were there, holding court. . . Mr. Powell said that his eyesight was so bad that he wanted Mr. Hightower to take charge of the case. Mr. Paschall wrote out the answer and I swore to it before Squire Hightower, and handed it to him." The witness then testified that his answer was complete and timely. He further testified: "I was never served with any traverse on that answer, and never heard of the case until I heard that this fi. fa. had been issued against me."

G. O. Hightower testified in part as follows: "I am the justice of the peace in Red Bud District. I was at the court at the October or November term, 1926, I don't remember which. . . Squire Powell was there and he asked me to take charge of a case he had that was filed by Haney & Tinsley against H. E. Borders, L. P. Owens, garnishee. . . Mr. Powell said to me that he couldn't see well enough and wanted me to take charge. I told him that I would, and he stepped down off the porch where we were holding court and sat on the steps. Mr. Owens had an answer to the garnishment which had been served on him read by Mr. Paschall, or Mr. Cantrell, and I swore him to it and he handed it to me. This was in Mr. Powell's presence. All of us were there. This answer stated that Mr. Owens was not due H. E. Borders anything, either at the time it was served, or at the time the answer was made. I have looked among my papers for that paper and can't find it. There was a lot of confusion out there that day, and I don't know what became of the paper. Mr. Cantrell came up to my house and we looked for the paper, but could not find it." On cross-examination the witness testified as follows: "Mr. Powell never did leave, just sat down on the steps. He was right there, and asked me to take hold for him, and the answer was handed to me by Mr. Owens. I think I took the answer and put it in a bundle of papers, the papers in the Jackson & Suggs case, and bound them all up together. In a few days Mr. Suggs came over after the papers, and I handed him the whole bundle. In my opinion the answer is among those papers. I have never looked there. He lives about four miles from me. I think the answer

is there, for I gave him the whole bundle." Mr. Cantrell testified in substance that Hightower and Powell were holding court at a store; that Paschall wrote an answer to the summons of garnishment for Owens, which recited that Owens was not indebted to Borders at the time of the service, nor at any time between the date of the service and the answer; that Owens swore to the answer before Squire Hightower and handed it to him in the presence of Squire Powell; and that he made a search through the papers of both Hightower and Powell, but could not find the answer. J. H. Paschall testified: "Squire Powell was present and asked Squire Hightower to take charge of the case on account of his bad eyesight. Hightower took charge of the case, and the answer was handed to him." R. K. Haney, one of the plaintiffs, testified: "I went to see Squire Powell with Mr. Henson in June of last year to see about this case. I had been informed that it had not been answered. When we got to Squire Powell's house, he asked his wife to get his docket. She got the docket, and Squire Powell asked Mr. Henson to write the judgment for him as he could not see well. Mr. Henson wrote the judgment, but at the dictation of Squire Powell. Mr. Henson did not mention writing the judgment until Squire Powell asked him to. He said it had not been answered."

The first special ground (numbered 4) alleges that the court erred in making the following ruling: "The act of Justice Powell asking Justice Hightower to take charge of the case constituted Justice Hightower his agent to receive and file the said answer to the summons of garnishment, and the said answer is held by the court to have been properly filed in said case." The evidence on which the foregoing ruling was based has been stated and need not be repeated here. We think that under the facts of the case, both justices being present, and Justice Powell being incapacitated from transacting business, because of his poor eyesight, the above ruling was correct.

Special ground 5 complains of the court's ruling permitting various witnesses to testify as to the contents of the garnishee's answer, over the objection that the answer itself was the best evidence of its contents, and that no sufficient foundation was laid to permit such proof by secondary evidence. Mr. F. A. Cantrell, one of the attorneys of record for the defendant in error, testified that

he and Squire Hightower looked through the latter's papers, and that he, Cantrell, looked through Squire Powell's papers, and that the garnishee's answer could not be found. G. O. Hightower also testified that he searched his papers for said answer, but could not find it. True, Hightower testified on cross-examination that he thought he had put said answer in a bundle of papers which he had delivered to a Mr. Suggs, and that he had never looked in that bundle of papers for said answer; but it does not appear that L. P. Owens, or his attorney, or any one else was in any way apprised of Hightower's suspicion that he had inadvertently delivered the garnishment answer to Suggs, and it could hardly be expected that Owens or his attorney would search a man living four miles from court for court papers. The rule laid down in the early case of *Harper* v. *Scott,* 12 *Ga.* 125 (4), is the law of Georgia today, and, under it, the court did not abuse its discretion in admitting secondary evidence. The rule mentioned is this: "In order to permit the introduction of secondary evidence of the contents of a lost paper, it is only necessary to establish a reasonable presumption of its loss or destruction; and this presumption is held to be established when the party shows that in a reasonable degree he has exhausted all the sources of information and means of discovery which the nature of the case suggests, and which were accessible to him." In *Florida Coca-Cola Bottling Co.* v. *Ricker,* 136 *Ga.* 411 (71 S. E. 734), it was said: "In order to admit secondary evidence, it must appear that the primary evidence, for some sufficient cause, is inaccessible to the diligence of the party tendering such evidence. The question of diligence is one of sound discretion in the court." In *Brookman* v. *Rennolds,* 148 *Ga.* 721 (4) (98 S. E. 543), the rule last quoted is amplified by adding the statement that the court's discretion will not be interfered with unless flagrantly abused. There is no merit in this special ground of the motion for a new trial.

It appears rather unusual that F. T. Powell should have rendered the judgment against the garnishee and Hightower should have tried the illegality case, but this is no concern of ours. It can not be presumed that Hightower did not have jurisdiction (*Carter* v. *Griffin,* 113 *Ga.* 633, 38 S. E. 946) and besides the plaintiffs recognized his jurisdiction by trying the case before him and appealing from his judgment.

In appears, from the evidence, that the defendant in error made answer in writing to the summons of garnishment at the proper time and place; that the said answer was never traversed; that Owens had no notice of any traverse, in any event; and that some eight months after Owens was served with a summons of garnishment, judgment was taken against him without his having any sort of notice or knowledge that such judgment was being taken.

If a plaintiff in a suit in a justice's court desires to traverse the answer of the garnishee, "he shall do so when the same is filed; and if such traverse is filed, the issue shall be heard at the same term, unless continued for cause." See Civil Code (1910), § 4755. When the plaintiff in fi. fa. files no exceptions or traverse to the answer of the garnishee, even though such answer be incomplete, the garnishee should be discharged. See *Fitzpatrick Co.* v. *Shepherd*, 22 *Ga. App.* 44 (95 S. E. 530).

The evidence demanded the verdict directed by the court, the general grounds of the motion for a new trial were properly overruled, and for no reason assigned did the court commit error requiring a new trial.

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*