ASA WHITE *vs.* WILLIS MARTIN.

Ip 215
107   558

*Error from Greene Circuit Court*—Before the Hon. A. CRENSHAW.

A recovery in one form of action, will bar a suit in another form brought on the same cause.

Where A. brought trover against B. and in that action recovered the value of a woman slave—held, that a subsequent action brought to recover her issue, born pending the first action, and not included in it, would not lie.

This action was trover for the recovery of two negroes. In the year 1824, Martin instituted an action of trover against White, for the permanent conversion of sundry negro slaves. among whom was a negro woman slave named Charity. In that action Martin recovered a judgment against White, for the full value of the said slaves, which judgment was satisfied in full. While the said action was pending, the two negro slaves, now the subject of the present suit, were born of the slave Charity, and no recovery had on them. In the court below, there was a judgment for the plaintiff, Martin.

On the trial, the defendant, White, offered to prove, in mitigation of damages, that the slaves in contest, had been born in his possession, and raised by him. The court sustained an objection to this testimony, and the decision of the court being excepted to, was brought before this court for revision.

STEWART, for Plaintiff,
Cited 6 *Bacon*, 678, 679—4 *Bibb*, 270—4 *Com. Law. Rep.* 499—4 *Bacon*, 7—2 *Poth. Oblig.* 18—*Cro. Jus.* 73—2 *Raym.* 1216—1 *Johns.* 65.

SHORTRIDGE, and

ERWIN, *contra.*—4 *Mass.* 466—4 *Pick. R.* 467.

STEWART, in reply.

2 *Stewart,* 38,—1 *Strange,* 142,—1 *Wilson,* 23,—*Eliz.* 116.

By Mr. Justice SAFFOLD.

The action was trover, by Martin against the plaintiff in error, in the Circuit Court of Greene county, for the conversion of two negro children.

The suit was tried on an agreed case, as follows : In 1824, Martin brought trover against White for the permanent conversion of several slaves, alleged to be the property of Martin. Among them was a woman, Charity. In 1831, Martin recovered the full value of the slaves sued for, and that judgment has been *satisfied.* Pending that suit, the young negroes, the subject of this action were born. These children not being included in that suit, no recovery was had for their value. A demand was made of all the slaves first sued for, including Charity, before the commencement of the former action. No other demand was made for these now sued for. White took the negroes first sued for, wrongfully. If on these facts the Circuit Court should be of opinion the plaintiff was entitled to recover, it was agreed that there should be an inquiry of damages—otherwise, judgment for the defendant.

In 1832. the court gave judgment for the plaintiff, Martin. A writ of inquiry was executed, and the damages assessed at three hundred and forty-five dollars. On the inquest of damages, White offered to prove in mitigation, that these children had been born in his possession, and had been reared by him ; and also offered to prove, what would have been a reasonable compensation for nurturing and raising them, in mitigation of damages. This evidence was rejected, and for this White excepted.

White
vs.
Martin.

It is assigned as cause of error,

1st. That on the agreed case, the judgment should have been given for the defendant below.

2d. That the evidence offered in mitigation of damages, showing the expense of nurturing and raising the negroes in question, ought to have been admitted.

The case presents a question apparently new. In this precise form, it has not before occurred within the recollection of either member of the court. The learned counsel admit, that their researches have not discovered any direct adjudication on the point. The question must, therefore, depend on principle, and its analgy to other cases. From the nature of the subject, if the facts of the case furnish a ground of action, it might be well supposed similar suits would not have been extremely rare. That a recovery in an action of trover, for the permanent conversion of chattels, operates as a transfer, vesting the legal title in the defendant, is a principle of law now well settled, and not recently contested. The doctrine is the same in relation to trespass, when the property is destroyed, or the owner deprived of its value. In either case, " the damages recovered are the price of the chattel so transferred by application of law—" solutio pretii emptionis lex habiter." Chancellor Kent[a] so treats the subject, and [a]2 Kent's C. says, " the books either do not agree, or do not speak with 319. precision on the point. Whether the transfer takes place in contemplation of law, upon the final judgment merely, or whether the amount of the judgment must first be actually paid or recovered by execution," he reviews various authorities, tending to different conclusions on the point. Among others, he refers to Drake vs. Mitchell,[b] where it was said by [b]3 East, 251. Lord Ellenborough, " that a judgment recovered in any form of action, was still but a security for the one general cause of action, until it was made productive, in satisfaction to the party; and until then, it would not operate to change any other collateral concurrent remedy, which the party might have."—

28

White
vs.
Martin.

This, the chancellor considers the more reasonable, if not the more authoritative conclusion on the question.

As the judgment in question was *satisfied*, before the institution of this suit, the principle alluded to, is no further material to this case, than it can influence the question as to the point of time to which the change of title relates— whether to the conversion, the *judgment*, or the satisfaction. Admitting the *latter* to be necessary to the consummation of the transfer, it does not follow that the relation is not to the *former*. That such should be the relation, appears a necessary consequence of the principle—that the plaintiff seeks redress alone, for the damages arising from the conversion— and that the death or the destruction of the article by any casualty afterwards, is the loss of the defendant. Having done the act, which the plaintiff may treat as a purchase, if he choose to elect that remedy, the defendant must abide the consequences of the purchase, if the remedy be prosecuted with succes. Even in the action of detinue, as the plaintiff is entitled to recover the alternate value of the property, if the specific article cannot be obtained, the plaintiff, in the event of the death or destruction of the property, pending the suit, may still recover the value. It was so held by this court, in *White*

[a] 1 Stewart.
[b] 4 Bibb, 270.

vs. *Ross*,[a] and by the Supreme Court of Kentucky, in *Carrie* vs. *Early*.[b]  In the latter case, Chief Justice *Boyle* observes, " were the recovery of the specific thing the absolute and sole object of the action of detinue, the destruction or annihilation of the thing would necessarily defeat the action ; but as the object of the action is to recover the thing only on condition that it can be had, and if not, then its alternate value, it results that the action cannot be defeated by the destruction of the thing, unless it were under circumstances that would excuse the defendant from being responsible for its value."

I consider the principle too well established to require any reference to authorities, that in trover, the plaintiff has a right to recover the value of the property converted, and interest on the amount from the time of conversion, to the date of the

judgment, as the legal measure of, damages. If there be a few cases to the contrary, as in *Mercer* vs. *Jones*,[a] we cannot regard such as sound authority. But I am not prepared to say that this measure is the *highest limit* that the plaintiff can legally claim, under peculiar circumstances, and where the justice of the case actually requires more.

One authority has been cited for increasing the measure, where it appeared clearly inadequate to the plaintiff's loss, and the defendant's gain. In *Greening* vs. *Wilkinson*,[b] the action was trover, for East India Company's warrants for cotton. It appeared in evidence, that the cotton was worth six pence per pound, at the time of the refusal to deliver it up, but at the time of trial was worth ten pence half penny.—*Abbott*, Chief Justice, ruled, that the amount of damages was for the consideration of the jury : that they might give the value at the time of the conversion, or at any subsequent time, in their discretion ; because the plaintiff might have had a good opportunity of selling the goods if they had not been detained. To the idea that the plaintiff might have purchased other cotton at the low price at the time this was detained, the court replied, that by the detention the plaintiff may have been deprived of the means of purchasing. The principle to be extracted from this decision, I take to be, that though the plaintiff may legally recover the value of the article when converted, with interest thereon ; yet it is within the province of the jury to allow him the subsequent enhanced value, without interest, if in their discretion, justice requires it. But as contended in argument, let this principle be settled either way—that the value of the property at the time of *conversion*, or at the time of the *trial*, was the true measure of damages. It is not decisive of the question, whether these slave children, born pending the suit for their mother, can furnish a legitimate ground for this subsequent action. If the plaintiff below was entitled to recover damages only for the injury of which the article was susceptible when converted ; or if he was entitled to recover, also for the

*White vs. Martin.*

[a] 3 Camp. 447

[b] 11 Eng. Com L. R. 499.

White
vs.
Martin.

Randolph,
57.

issue pending the action, and failed to do so, the right must have terminated with the former suit. For the same act of trespass, or conversion, but one satisfaction can be had. In *Hill* vs. *Long*,[a] before the court of appeals in Virginia, the plaintiff had prosecuted an action of trover for a horse, and and failed to recover : he then brought trespass for the forcible taking the horse from his *possession*, not being his property, and stopping his *waggon and team*, the residue of the horses being his property. The court held, that the action of trover was a legal bar to the subsequent action of trespass ; that by bringing *trover*, the plaintiff had *waived* the *trespass*. The court remarked, that " a party is not precluded from bringing trover or detinue, because the taking *was violent*. He may waive the trespass, and admit, as these actions do, that the property came lawfully into the possession of the defendant ; and this the defendant cannot deny or traverse, so as to defeat the action, by showing that he took tortious possession." They determined that it was all but one act, consequently but one cause of action ; and that the plaintiff had his election to sue for the whole in trespass, or sue in trover or detinue, but could not carve two suits out of it.

The principles of that decision go to deny the right of a second action for the same conversion, or for the same wrong, whether tortious or otherwise ; also, to show, that the *tort* in trover or detinue, is always waived. All the arguments used in this case, founded on the supposed *tort*, must be considered inapplicable, and even if not, the former suit and judgment would preclude further inquiry into it.

It is contended, that justice will not permit White to retain the children under his judicial title to the mother, because he has paid damages only for her ; and that these furnish a subsequent cause of action. We would incline to admit, that the plaintiff might, at any time before the former trial, unless barred by the statute, have dismissed that suit, and renewed his action, including the children. Whether in that event, a demand of the children also would have been necessary, is not

a question in this view of the case. But we think, after having the benefit of a judgment, and satisfaction in that action, he has, in legal contemplation, full redress for all the consequences of the original injury. He is presumed to have recovered the full value of the slaves, converted at the time of the taking, with interest thereon; that this is as much as he could have sold them for; and he has elected to convert the taking into a purchase by the defendant. The services of the mother of these children, pending the suit may have been of more value than the issue. Suppose one of the subjects of the former suit to have been an able or skilful man, the value of his services might well have been four fold the nett value of these children; yet, in either of these cases, the value of the property at the time of the conversion, with interest, or at most, the enhanced value at a subsequent period, is all that the law deems necessary to adequate, redress. All the qualities of the article converted, are proper for the consideration of the jury, in determining their value; and doubtless, a jury would place a higher value on a female slave promising issue, than on one of a contrary description; if she has proved the issue, between the conversion and the trial, she has furnished the best evidence of that quality. These circumstances, it is believed, are entitled to their influence with the jury; and while increasing the damages on account of the developement of the prolific nature of the female, they would of course consider the expense of nurturing and raising the offspring. In this way, we believe, ample justice can be done without infringing any rule of law. We think that the Circuit Court erred, as supposed in the first assignment of error.

The disposition of the first point, supercedes the necessity of any inquiry into the second.

Let the judgment be reversed.