4367.  HUNTER, PEARCE & BATTEY v. LAWTON-ANDER-
                        SON COMPANY.

1. Where a common carrier issued a bill of lading to a named consignee,
   and subsequently, by mistake, issued a way-bill or manibill covering the
   property described in the bill of lading and directing delivery to a
   different consignee, and under it the property was delivered to the
   latter by the carrier, and thereafter the carrier paid the full value of
   the property to the holder of the bill of lading, who accepted the pay-
   ment in full satisfaction of the loss resulting from the wrongful delivery,
   the title or right of possession of the property thereupon passed, by
   operation of law, to the carrier; and the one to whom the bill of lading
   had been issued and with whom the carrier had made settlement for
   the wrongful delivery could not thereafter bring suit in his own name
   to recover the property or the value thereof from the person to whom
   the delivery had been made.
2. The evidence demanded the verdict as directed for the defendant.
                        DECIDED DECEMBER 21, 1912.

Trover; from city court of Savannah—Judge Davis Freeman.
July 29, 1912.

*Lawton & Cunningham, H. W. Johnson,* for plaintiffs.
*Saussy & Saussy,* for defendant.

HILL, C. J.  The writ of error in the present case challenges
the correctness of the judgment directing a verdict for the de-
fendant.  The suit was one in trover, brought to recover two bales
of sea-island cotton, and the facts (which are not in controversy),
briefly stated, are as follows: • The two bales of cotton were shipped
by J. T. Wright & Son to the plaintiffs, Hunter, Pearce & Battey,
of Savannah, Ga.  The Central of Georgia Railway Company issued
to Hunter, Pearce & Battey a bill of lading covering these two
bales, but subsequently, through an error on the part of an agent
of the railway company, a way-bill or manibill, covering the same
cotton, named the defendant, Lawton-Anderson Company, of
Savannah, as consignee, instead of Hunter, Pearce & Battey.  The
reasons leading to this mistake are not material.  The way-bill
or manibill was not delivered to the consignors or the consignee,
but accompanied the shipment in the hands of the conductor.  The
delivery agent at Savannah, not having seen the bill of lading and
having no knowledge of it, and being guided by the way-bill, de-
livered the cotton to Lawton-Anderson Company.  This company
did not know that the cotton was not intended for it; it had an
account with the shippers and had occasionally received shipments

without being advised by the shippers. It received the two bales of cotton from the railway company and placed them to the credit of the shippers on its books, and held them without knowledge that they were in fact consigned to Hunter, Pearce & Battey, until it received a letter from the shippers, giving that information and requesting that the two bales be turned over to Hunter, Pearce & Battey. This request was refused. While the evidence does not disclose that the Lawton-Anderson Company made any advances to the shippers on these two bales of cotton, yet it is fairly to be inferred, from the testimony, that the shippers owed the company on an account, and for this reason it kept possession of the cotton. In the meantime Hunter, Pearce & Battey had received the bill of lading for the two bales of cotton, but they had not received the bales, and they thereupon called upon the railway company to make delivery. After some delay in tracing the cotton, the facts as above stated were disclosed, and when the Lawton-Anderson Company refused to turn over the two bales to Hunter, Pearce & Battey, the latter called upon the railway company to pay their claim for the value of the cotton, and the claim was paid by the railway company. The claim amounted to $232.67. The trover suit to recover the two bales of cotton was originally in the name of Hunter, Pearce & Battey, for the use of the Central of Georgia Railway Company, against Lawton-Anderson Company, and on the trial the plaintiffs amended the petition by striking the name of the usee, leaving the case pending in the name of Hunter, Pearce & Battey. A member of the plaintiffs' firm testified that, having been paid the value of the cotton by the railway company before the suit was filed, they had no claim thereafter, either against the defendant or against any one else, and did not claim title to the cotton. It is, however, immaterial as to what the plaintiffs claimed. Irrespective of any claim made by them, do the facts as stated show that at the time the suit in trover was filed, they had title to the cotton or the right of possession? The learned trial judge, believing that under the facts the plaintiffs parted with their title to the cotton when they received payment of their claim from the railway company, directed a verdict for the defendant.

Did the plaintiffs have any title or property right in the two bales of cotton which would have conferred the right of possession, so as to maintain a trover suit against the defendant? It is strenu-

ously insisted by the plaintiffs that notwithstanding that they had been paid the value of the cotton by the railway company before the suit was brought, the title to it still remained in them, because the title could not have passed out of them except by an assignment in writing, and that, even conceding that upon the payment to them by the railway company of the value of the cotton, the equitable title passed out of them and the railway company became the equitable assignee of this title, yet the railway company, as the equitable assignee, had no right to sue the defendant for the cotton or the value thereof; citing the cases of *Florida Coca-Cola Bottling Co.* v. *Ricker,* 136 *Ga.* 411 (71 S. E. 734), and *McElmurray* v. *Harris,* 117 *Ga.* 919 (43 S. E. 987), where it is held that the right to sue in an action of trover is in the party in whom the legal title to the personalty was at the time of conversion, and that in such an action the sole issue is as to the title to the property in dispute. This may be conceded to be true and yet not be inconsistent with the right, as equitable assignee of the title to the cotton, to bring suit therefor in some other action than that of trover; but it seems to us clear that when the railway company paid the plaintiffs' claim for the loss of the cotton, the title to the cotton passed immediately into the railway company, and the railway company would have the right to enforce its claim as against the possession of the Lawton-Anderson Company, and this claim could be defeated by the latter only by a superior right or title. We do not see how, in any event, there was any sort of right of action in Hunter, Pearce & Battey, either for the cotton or for its value, after the railway company had paid them the full value of the cotton. It seems to us that a resort to first principles would show this to be the only logical or legal position. If Hunter, Pearce & Battey had the right to recover from Lawton-Anderson Company the two bales of cotton, or the value thereof, they would then recover double payment for the same claim; the voluntary payment from the railway company and payment as a result of a suit from Lawton-Anderson Company. In that event, what would be the position of the railway company? Suppose Hunter, Pearce & Battey, having recovered from Lawton-Anderson Company, refused to pay the railway company, would not the railway company then be driven to the necessity of suing the former for the value of the cotton which it had paid? And then could the railway company recover it, it being a voluntary payment?

We can not conceive of any reason in law why, under the facts, the railway company would not have had the right to bring suit in its own name against Lawton-Anderson Company for the two bales of cotton or their value. True, in that suit the question would arise as to the relative rights of the railway company and Lawton-Anderson Company. If the latter had advanced to the shippers money on the cotton, assuming that the cotton was properly consigned to it, there might be a question as to whether the railway company, whose error caused the mistake to be made, would be entitled to recover against the Lawton-Anderson Company, which had innocently and under well-founded belief as to its right to the two bales of cotton, advanced money to the owners or shippers. But this is not material in the present suit, for the only question here is, what right to this cotton, or its value, did Hunter, Pearce & Battey have after they had been paid by the railway company? We can not imagine that they had any right, either in law or in equity, to the cotton or the value of the cotton; for upon payment to them by the railway company of the value of the cotton, any right which they had thereto passed to the railway company. "If the property intrusted to the carrier be lost or destroyed whilst in his charge, by the wrongful act or carelessness of another, and the carrier pay to the owner its value, which is accepted in full satisfaction of his loss, he will be substituted to all the rights of such owner, and may recover such value from the wrong-doer for his own use and benefit." Hutchinson, Carriers (3d ed.), § 781.

In *McLendon* v. *Finch*, 2 *Ga. App.* 421 (58 S. E. 690), it was held by this court that "if the plaintiff in a suit brought upon a given cause of action accepts a sum of money in full settlement thereof, he can not thereafter set up the same cause of action against another whom he had the election of suing in the first instance." Hunter, Pearce & Battey in the first instance could have sued the railway company upon its bill of lading for the cotton, or could have brought suit against Lawton-Anderson Company for the cotton, setting up the facts amounting to wrongful possession by the latter. Suppose they had elected to sue the railway company and had recovered, surely they could not subsequently sue Lawton-Anderson Company on the same cause of action. And can there be any difference in principle where they have been paid by the railway company the value of the cotton? It seems to us that

the proposition that they would not have this dual right is too clear for argument, for the settlement by the railway company was as complete an estoppel against another suit upon the same cause of action as a judgment against the railway company, which judgment had been paid, would have been. In the case of *State* v. *Bank of Quitman,* 117 *Ga.* 849 (45 S. E. 236), it appeared that a bond payable to the State of Georgia was made by Jones, tax-collector, upon which the Fidelity & Deposit Company of Maryland acted as surety. A default having occurred, the surety company paid off and fully discharged its liability to the State by paying to the State the amount of the default of the said Jones. A suit was then brought in the name of the State, suing for the use of the surety, to recover a sum alleged to have been received by the bank from Jones in payment of a private debt, with knowledge that the money so paid was the property of the State. A demurrer to the petition was sustained, and the Supreme Court, in passing upon this judgment, used the following language: "The only ground of the demurrer which we deem it necessary to consider is that which sets up that 'the State, having no cause of action, can not have or maintain said suit in its own behalf or for the use of any other person.' It is clear that when the tax-collector's shortage was paid to it by the surety, the State had no longer any cause of action against the defaulter in the civil courts. His debt to it had been discharged and his liability transferred from the State to the surety. That being the case, it is equally clear that the State can not maintain an action for the use of the surety," etc. "A person who has once recovered judgment for a sum of money is estopped from averring that he ought to recover any further sum for the same cause of action." Stewart v. Todd, 9 Q. B. 767.

We therefore conclude that as Hunter, Pearce & Battey had no legal title to the cotton and no right of possession, their cause of action for it having been fully settled by the railway company, they could not bring suit for it; and as this trover suit could not be brought by them for the use and benefit of the Central of Georgia Railway Company, the remedy of the railway company was to bring a direct suit against Lawton-Anderson Company in its own name; for the railway, company had not only paid Hunter, Pearce & Battey the value of the cotton, but the bill of lading for

the cotton had been surrendered to it; and these facts would have entitled it, in the absence of any superior right of Lawton-Anderson Company, to retake possession of the cotton or recover its value. For the reasons stated, we think the facts demanded a direction of the verdict for the defendant.      *Judgment affirmed.*