(106 So. 496)

**METCALF et al. v. PAYNE, Director General of Railroads.    (4 Div. 226.)**

(Supreme Court of Alabama.    Dec. 10, 1925.)

**I. Executors and administrators** ⚙➡227(1)— Presentation of claim against deceased shipper's estate for benefits received through carrier's crossing of shipments sufficiently disclosed nature and character of claim, and prevented operation of statute of nonclaims.

Director General of Railroads' presentation of claim against estate of deceased shipper of cattle, for benefits received by deceased through railroad's mistake in crossing shipments of cattle, *held* sufficiently to disclose nature and character of claim against estate, and to distinguish it from other claims, so as to prevent operation of statute of nonclaims.    Code 1923, § 5815.

**2. Subrogation** ⚙➡41(5)—Complaint sufficient to show right in Director General to recover from estate of deceased shipper difference between value of crossed shipments, which resulted to deceased's benefit.

In action by Director General of Railroads against executors of deceased shipper's estate, count of complaint *held* sufficient to show right on part of plaintiff to recover from estate of deceased shipper difference between value of shipments by deceased and another shipper, which were crossed by railroad's mistake to the benefit of deceased, and for which plaintiff was liable and had paid shipper who was damaged thereby.

**3. Carriers** ⚙➡212 — Subrogation ⚙➡1 — Railroad's crossing of shipments amounted to conversion; on paying damaged shipper, railroad became subrogated to his rights against shipper benefited by the error.

Where railroad company crossed deceased shipper's shipment of cattle with that of another shipper through mistake, the railroad company was liable to the damaged shipper for conversion of the cattle, and when it paid such damages it became subrogated to the rights of the damaged shipper to recover against deceased shipper, who was benefited by such error of railroad in shipment and consequent conversion of the cattle.

Gardner and Somerville, JJ., dissenting.

Appeal from Circuit Court, Geneva County; H. A. Pearce, Judge.

Action by John Barton Payne, Director General of Railroads, operating the Central of Georgia Railroad, against W. L. Metcalf, executor, and Sallie Metcalf, executrix, of the will of P. M. Metcalf, deceased. From a judgment for plaintiff, defendants appeal. Transferred from Court of Appeals under section 7326, Code of 1923. Affirmed.

This cause was tried before the court without a jury, resulting in a judgment for plaintiff, from which defendants have appealed.

The material facts are, in brief, as follows: On January 25, 1919, a carload of cattle belonging to P. M. Metcalf (now deceased), and consisting of 44 head, was shipped over the Central of Georgia Railway from Eufaula, consigned to Rice & Son, New Orleans, La. On the same date D. C. Turnipseed shipped over said Central of Georgia Railway a car of 37 head of cattle consigned to a concern at National Stockyards, Illinois. These cars were crossed in some manner at Montgomery, the shipment intended for New Orleans going to National Stockyards, and the shipment intended for the latter place going to New Orleans. The car sent to New Orleans was sold by Rice & Son and netted $2,670.13, and the proceeds remitted to P. M. Metcalf. The car belonging to Metcalf, which went to National Stockyards, contained smaller, inferior cattle, and was of value not more than $1,270.13. P. M. Metcalf therefore actually received $1,400 more than his cattle were worth. The Director General of Railroads made a settlement with Turnipseed, the mistake in shipment being the fault of the railway, and brought this suit against the executors of the estate of P. M. Metcalf to recover the excess sum received by Metcalf as a result of the error. There was no proof of assignment by Turnipseed of any claim he had against Metcalf, but plaintiff relied upon the doctrine of subrogation. There was no proof of any presentation of any claim against P. M. Metcalf during his life or to his executors, but plaintiff rested for proof of presentation upon the claim filed in the probate court where the estate of P. M. Metcalf, deceased, was being administered, which claim is as follows:

"Estate of P. M. Metcalf, Deceased, Dr., to John Barton Payne, Director General of Railroads. Operating Central of Georgia Railroad, in the Sum of Fourteen Hundred ($1,400) Dollars, for that:

"(1) January 25, 1919, R. H. Barbaree shipped via. Central of Georgia Railroad forty-four (44) head of cattle in car L. & N. 19978 from Eufaula, Alabama, consigned to C. H. Rice and Son, New Orleans, Louisiana, which cattle were owned by the deceased, P. M. Metcalf.

"(2) January 25, 1919, D. C. Turnipseed shipped via. Central of Georgia Railroad thirty-seven (37) head of cattle from Fitzpatrick, Alabama, in car L. & N. 19928, consigned to National Live Stock Commission Company at National Stockyards, Illinois, which is near St. Louis.

"(3) These two cars of stock were crossed at Montgomery, Alabama. The shipment intended for New Orleans was sent to National Stockyards, Illinois, and the shipment intended for National Stockyards, Illinois, went to New Orleans, Louisiana.

"The car of stock which was sent to New Orleans, Louisiana, was sold by C. H. Rice and Son and netted $2,670.13, the proceeds of which were remitted to the deceased, P. M. Metcalf.

"The stock of P. M. Metcalf, which should have been sent to New Orleans, but was sent to National Stockyards, Illinois, was very much smaller cattle than, and inferior to, the cattle which was consigned to National Livestock Commission Company, but which went to New

⚙➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Orleans, Louisiana. The market value of the cattle which belonged to the deceased, P. M. Metcalf, was not more than $1,270.13, so that the said P. M. Metcalf actually received $1,400.-00 more than his cattle was worth., The forty-one (41) head of cattle which went to National Stockyards, Illinois, was sold there and netted $1,123.41. Three head of the stock died in transit. Therefore the estate of the said P. M. Metcalf is indebted in the sum of $1,400."

"State of Georgia.        County of Chatham.

"Before me personally appeared George S. Gaillard, who being duly sworn, deposes and says: Deponent is freight claim agent of Central of Georgia Railway Company and is the duly authorized agent of the Director General of Railroads for the collection of all outstanding claims due the Director General of Railroads arising out of the operation of Central of Georgia Railroad, and that the facts stated in the foregoing account against the estate of P. M. Metcalf, deceased, are true and correct; and that the amount is justly due after allowing all proper credits.        G: S. Gaillard.

"Sworn to and subscribed before me this 6th day of July, 1920.

"[Seal.]        H. V. Jenkins,
"Notary Public, Chatham County, Ga.

"Filed in the office July 16, 1920.

·        "W. H. Morris, Judge of Probate."

Defendants' objection to the introduction of said claim, upon the ground it showed no liability of defendants to the plaintiff, was overruled and exception duly reserved.

Count 4 of the complaint is as follows:

"The plaintiff claims of the defendants $1,400, for that, on to wit, January 25, 1919, P. M. Metcalf, now deceased, through his agent, R. H. Barbree, shipped via. Central of Georgia Railroad 44 head of cattle in car L. & N. 19978 from Eufaula, Ala., consigned to C. H. Rice & Son, New Orleans, La., and for that on the same day, to wit, January 25, 1919, D. C. Turnipseed shipped via Central of Georgia Railroad 37 head of cattle from Fitzpatrick, Ala., in car L. & N. 19928, consigned to National Livestock Commission Company at National Stockyards, Ill., which stock yards are near the city of St. Louis, Mo. Plaintiff avers that said two herein named shipments of cattle crossed at Montgomery, Ala., on the line of said Central of Georgia Railroad, and that the said shipment intended for and consigned to said C. H. Rice & Son of New Orleans, La., was in fact sent to said National Stockyards, Ill., and there delivered to said National Live Stock Commission Company, and by said company sold and disposed of 'for account of whom it may concern, and for the net amount of $1,123.41; and that said shipment of cattle consigned to said National Livestock Commission Company at National Stockyards, Ill., was in fact sent and shipped to New Orleans, La., and there delivered to said C. H. Rice & Son, who disposed of same for the net amount of $2,670.13, which amount was, by said C. H. Rice & Son, paid to said P. M. Metcalf, now deceased. And plaintiff avers that, on to wit, May 1, 1919, plaintiff or his predecessor in office, as a Director General of Railroads, paid and settled with said D. C. Turnipseed for the damage sustained by him as a result of the said crossing of said two

shipments at Montgomery, Ala., and the carrying of his said shipment intended for National Stockyards, Ill., to New Orleans, La., and as in this count set forth and recited. And plaintiff avers that the amount sued for in this case represents the difference between the net proceeds of the sale of the said cattle which were actually shipped to New Orleans, as herein shown, less the market value at New Orleans, at the time of said sale at that place, of the said cattle of P. M. Metcalf, now deceased, and which cattle should have been shipped to New Orleans, La., but which cattle as herein shown, were in fact shipped to said National Stockyards, Ill., or to St. Louis, Mo., which is near said National Stockyards. Wherefore plaintiff sues."

Mulkey & Mulkey, of Geneva, for appellants.

Demurrer to count 4 should have been sustained. 1 Hutchinson on Carriers, § 130. The statement of claim was insufficient, and its admission was error. Watson v. Hamilton, 210 Ala. 577, 98 So. 784; Smith v. Fellows, 58 Ala. 467.

C. D. Carmichael, of Geneva, and A. A. Carmichael, of Miami, Fla., for appellee.

The claim filed in the probate office clearly sets forth the nature of the demand, and is sufficient. Hallett v. Branch Bank, 12 Ala. 193; Flinn v. Shackleford, 42 Ala. 202; Floyd v. Clayton, 67 Ala. 265; Allen v. Elliott, 67 Ala. 432; Smith v. Fellows, 58 Ala. 467; Borum v. Bell, 132 Ala. 85, 31 So. 454; Gillespie v. Campbell, 149 Ala. 193, 43 So. 28; Parker v. Eufaula Nat. Bank, 121 Ala. 516, 25 So. 1001; Holloway v. Calvin, 203 Ala. 663, 84 So. 737; Page v. Bartlett, 101 Ala. 193, 13 So. 768; Pollard v. Sears, 28 Ala. 484, 65 Am. Dec. 364. Plaintiff settled the claim of Turnipseed, and was thereby subrogated to the latter's demand against defendants. 37 Cyc. 363; White v. Martin, 1 Port. (Ala.) 215; Crescent News v. Hines, 7 Ala. App. 609, 61 So. 9; Griel Bros. v. Pollak, 105 Ala. 249, 16 So. 704; Vandiver v. Pollak, 107 Ala. 547, 19 So. 180, 54 Am. St. Rep. 118; Hutchinson on Carriers (3d Ed.) § 781; McWhorter & Armor v. Moore, 7 Ga. App. 439, 67 S. E. 1100; Hunter, etc. v. Lawton Co., 12 Ga. App. 23, 76 S. E. 782.

PER CURIAM. [1] The court is of the opinion that the presentation of the claim against the estate sufficiently discloses the nature and character thereof, and sufficiently distinguishes it from all other claims, so as to prevent the operation of the statute on nonclaims (section 2590, Code of 1907, and section 5815, Code of 1923), in favor of the estate of defendants' intestate. Watson v. Hamilton, 210 Ala. 577, 98 So. 784; Hallett v. Branch Bank, 12 Ala. 193; Smith v. Fellows, 58 Ala. 467; Bibb-Falkner v. Mitchell, 58 Ala. 657; Holloway v. Calvin, 203 Ala. 663, 84 So. 737; Parker v. Eufaula Nat.

Bank, 121 Ala. 516, 25 So. 1001; Kornegay v. Mayer, 135 Ala. 141, 33 So. 36; Flinn v. Shackelford, 42 Ala. 202.

[2] Count 4 discloses an error in the shipment of the two cars of cattle occurring in Montgomery on the line of plaintiff railroad and delivery of each to the wrong consignee and the cattle so disposed of, and an admitted liability on the part of the railway company for such erroneous shipment, which was tantamount to a conversion; that P. M. Metcalf, deceased, received the benefit of this error, and the shipper Turnipseed suffered the loss; that the railway company, recognizing such liability, paid Turnipseed the damages thus sustained; and that the sum sued for represents the difference between the net proceeds of these shipments. The court is of the opinion the demurrer to this count was properly overruled, and that it shows a right on the part of the plaintiff to recover from the estate of deceased Metcalf such difference.

[3] We are of the opinion the facts therein disclosed, which are supported by the proof, are sufficient to show a liability for conversion of the shipment to Turnipseed by the railway company (Atlantic Coast Line Railroad Co. v. Dahlberg Brokerage Co., 170 Ala. 617, 54 So. 168; 10 C. J. 262 et seq.), and that under these circumstances the railway company became subrogated to the rights of Turnipseed to recover of Metcalf the benefits received by him by reason of the error in shipment and the consequent conversion of the cattle (White v. Martin, 1 Port. 215, 26 Am. Dec. 365; Griel Bros. Co. v. Pollak, 105 Ala. 249, 16 So. 704; Hutchinson on Carriers [3d Ed.] § 781; McWhorter v. Moore, 7 Ga. App. 439, 67 S. E. 115; Hunter, etc., Co. v. Lawton Co., 12 Ga. App. 23, 76 S. E. 782).

We find no error in the record, and the judgment will be here affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE, THOMAS, MILLER, and BOULDIN, JJ., concur.

GARDNER, J. (dissenting). While all the authorities agree the statement of claim need not be as specific as formal pleadings, yet it should be sufficiently definite to inform the personal representative of the nature and amount of liability it imposes, and to distinguish it with reasonable certainty from all similar claims. Smith v. Fellows, 58 Ala. 467; Bibb-Falkner v. Mitchell, 58 Ala. 657; Parker v. Eufaula Nat. Bk., 121 Ala. 516, 25 So. 1001; Holloway v. Calvin, 203 Ala. 663, 84 So. 737; Kornegay v. Mayer, 135 Ala. 141, 33 So. 36; Flinn v. Shackelford, 42 Ala. 202.

The case of Bibb-Falkner v. Mitchell, supra, is very much in point:

"A presentment which will avoid the bar of the statute must be more than enough merely to excite the inquiry of the personal representative; it must give such information of the existence of the claim, that he may determine—assuming its validity—how far he can proceed safely in the administration of the estate as solvent."

All the authorities agree that the presentation must show the *nature* of the claim. In the recent case of Watson v. Hamilton, 210 Ala. 577, 98 So. 784, may be found quotations from several of our decisions, among them that of Kornegay v. Mayer, 135 Ala. 141, 33 So. 36, wherein the court said the presentation must be such as "to give information of the *character* of the claim and of the amount of liability it imports." (Italics supplied.) And, as said in Smith v. Fellows, supra: "This rule has existed too long without material judicial or legislative change, to be open to reconsideration in this court."

In view of the long established rule, I am constrained to the opinion that the claim filed fails to meet these requirements. The *nature* or *character* of the claim is nowhere disclosed. It does not inform the representative of the estate how or in what manner the estate is due any amount to the plaintiff here. It may be conceded that it doubtless discloses a liability of the estate to Turnipseed, but there is no connection shown between a claim of Turnipseed and the plaintiff. There is no assignment of any such claim. Counsel for plaintiff do not rely upon any assignment, but upon the principle of subrogation, growing out of the fact that plaintiff settled with and paid Turnipseed on account of the mistake, but to give effect to any theory of subrogation the fact of such payment must appear. There is no such averment in the claim filed, nor language susceptible of such construction. Clearly, the representative could not determine upon any course of action as to the estate by a consideration of the claim filed. Its nature is not made to appear. The connecting link is omitted, and I am drawn to the conclusion, by the settled rule of construction of this statute, and by the logic of the situation in line with our former decisions, that the statement of the claim filed in the probate office was insufficient, and that defendants' objection to its introduction should have been sustained.

For this reason, therefore, I am constrained to respectfully dissent.

SOMERVILLE, J., concurs in the foregoing views.