32982. GRAHAM *et al. v.* FRAZIER.

DECIDED JUNE 21, 1950. ADHERED TO ON REHEARING JULY 29, 1950.

*Smith, Kilpatrick, Cody, Rogers & McClatchey, Hoke Smith,* for plaintiffs in error.

*Farkas & Burt, E. A. Landau Jr., J. V. Davis,* contra.

GARDNER, J. ■ It is first insisted by the defendants that the petition sets up no cause of action against either of the defendants because the "custodian receipts" are not warehouse receipts within the meaning of Georgia law and that, therefore, title to these peanuts remained in the Farmers' Exchange Inc. This being so, the defendants urge, the Farmers' Exchange was vested with the title to this property when same was delivered to the defendant Graham for the defendant cotton oil company, and that the title thereto was never in either the Bank of Commerce, the indemnity company or the plaintiff, said receipts being ineffectual to pass the title out of the warehouseman. We can not agree with this contention. This contest is between the plaintiff, who acquired these receipts by transfer and assignment from the indemnity company, which in turn acquired same in like manner from the bank, to whom the receipts were issued as a pledge for certain money due by the warehouseman to the bank as shown by the notes of the former in favor of said bank, and the defendant oil company and its agent, to whom, it is alleged, the warehouseman, after this pledge to the bank, delivered said peanuts. The provisions of our Uniform Warehouse Receipt Act apply. See Ga. L. 1937-38, Ex. Sess. pp. 390, 392. It is contended, however, by the defendants, that these receipts are not warehouse receipts within the meaning of that law. See Code (Ann. Supp.) § 111-404, which provides that warehouse receipts need be in no particular form but must embody certain requirements, which are set out in the section. The defendants state that it appears from the petition that there is not embodied in these receipts the requiremens of sub-sections (a), (e), (h), (i), and (j) of the above section. These receipts were given simultaneously with the notes executed by the warehouseman to the bank and are a part of that transaction. Nothing can be added to these receipts but they can be construed in the

light of these notes—of the entire transaction. So considering them, the location of the warehouse, where the peanuts were stored, is clearly Dawson, Georgia. However, the receipts themselves state "Farmers' Exchange, Incorporated  .  . Dawson, Ga.," and then recite that the peanuts were received on the date set out for the account of said bank "for storage in the warehouse of" said warehouseman. No other reasonable construction can be placed on these statements in the receipts than that the property dealt with therein was in the warehouse of the Farmers' Exchange Inc. at Dawson, Ga. The receipts state further that the peanuts are located in a particular portion of a named building. Then as to subsection (e) "The rate of storage charges." The transaction was on its face one where the warehouseman borrowed money from the bank, executing its notes therefor, and gave to said bank receipts for these peanuts, in effect placing the peanuts, which were in the warehouse and the property of the warehouseman, to the bank's account in said warehouse. This was in effect a delivery of the peanuts to the bank by the warehouseman and a placing of the peanuts in the warehouse by the bank to be kept for the bank's use. There were no storage charges on these peanuts involved and the warehouseman held the property for the bank—after making a constructive delivery thereof to the bank. The possession of the warehouseman of these peanuts was in effect the possession of the bank. The peanuts were presumably owned by the warehouseman at the time of issuing the receipts to the bank and there were no charges or advances by the warehouse on the peanuts. The same is true as to the requirement in this section as to the insurance carried. This was not a receipt issued by a warehouseman to the person delivering to it for storage of peanuts and the pledging of such receipt by the owner. The warehouseman issued the receipt in making a constructive delivery of the peanuts to the bank as a pledge for the sums due the bank and as shown by the notes in favor of the bank. We think that these receipts, whether called warehouse receipts or custodian receipts, substantially comply with the law and were evidence that the bank thereby had title to and owned the peanuts and the recital that the peanuts were "deliverable at said warehouse to the order in writing" of the bank "upon surrender

of this receipt properly endorsed" shows that the receipts were negotiable and could be transferred by the bank and such transfer would convey title of the bank to the transferee. Code § 12-601 provides that "A pledge, or pawn, is property deposited with another as security for the payment of a debt. Delivery of the property is essential to this bailment, but promissory notes and evidences of debt, warehouse receipts, elevator receipts, bills of lading, or other commercial paper symbolic of property may be delivered in pledge. The delivery of title deeds creates no pledge." Under the Uniform Warehouse Receipt Act it is provided that to " 'purchase' includes to take as mortgagee or as pledgee" and that " 'purchaser' includes mortgagee and pledgee." See Code (Ann. Supp.) § 111-401; Ga. Laws 1937-38, Ex. Sess., pp. 390, 391. So by accepting these receipts as a pledge under the circumstances the bank became under this law a purchaser of the property described in the receipts. These receipts were such instruments as the bank could transfer and assign to another and the assignment would pass the title and ownership of the bank to the property represented by such receipts.

There is no merit in the contention that "such receipts were ineffective to convey title to the bank, since the peanuts remained in possession" of the warehouseman and "therefore, the bank could not convey title" thereto to the indemnity company. As we have seen the receipts were effective to convey title to the bank. There was a constructive delivery, by the issuance of these receipts, of the peanuts to the bank. The receipts were negotiable and their transfer to the indemnity company vested it with the title of the bank. Said warehouse act provides that a negotiable receipt is "A receipt in which it is stated that the goods received will be delivered to the bearer or to the order of any person named in such receipt." Code (Ann. Supp.) § 111-407. The pledgee bank could transfer the notes and with it the possession of the things pledged to it, and the purchaser or transferee stands in the shoes of the pledgee. The transfer of the symbol amounts to a sale sub modo of the goods represented thereby. See *Continental Trust Co.* v. *Bank of Harrison,* 162 *Ga.* 758, 761 (134 S. E. 775). In this State, property may be pledged as security for a debt by mere delivery of a warehouse receipt issued to the owner of the property. The transfer

of warehouse receipts, or other symbols representing commodities stored may very properly be regarded as equivalent to an actual physical delivery of the property itself, and therefore will operate as a constructive delivery passing title.  See *Farmers' &c. Bank* v. *Bennett*, 120 *Ga.* 1012, 1015 (48 S. E. 398) ; *Central Ga. Land &c. Co.* v. *Exchange Bank of Macon*, 101 *Ga.* 345 (28 S. E. 863). "A person to whom a negotiable receipt has been duly negotiated acquires thereby: (a) such title to the goods as the person negotiating the receipts to him had or had ability to convey to a purchaser in good faith for value, and also such title to the goods as the depositor or person to whose order the goods were to be delivered by the terms of the receipt had or had ability to convey to a purchaser in good faith for value, and (b) the direct obligation of the warehouseman to hold possession of the goods for him according to the terms of the receipt as fully as if the warehouse had contracted directly with him." Ga. Laws, 1937-38, Ex. Sess. 390, 407; Code (Ann. Supp.) § 111-443.  As we have seen the Farmers' Exchange Inc., the warehouseman, after the transaction with the bank whereby these receipts were issued and delivered to the bank, did not retain this property as owner, but the title thereto had passed to the bank under the pledge thereof to it and until the pledge was fulfilled, that is, until the notes were paid, the peanuts were the property of the bank as a purchaser thereof.  The bank had the title and not the warehouseman.  The peanuts belonged to the bank.  When the cotton oil company, subsequently to the pledge of these peanuts to the bank and their constructive delivery to the bank, and while the bank held title, accepted delivery of the peanuts from the warehouseman, the said warehouseman had no title to the peanuts and could convey none to the cotton oil company.

The petition does not present a question of two innocent purchasers of personalty and whether one had actual or constructive notice of the purchase thereof by the other.  The petition avers that the peanuts were delivered by the warehouseman or Duskin, the secretary of the warehouseman, to the defendants and accepted by them after November 11, 1945, and that the defendants "took charge of said peanuts and . . exercised complete dominion and control over said peanuts to the exclusion" of the bank, the indemnity company and the plaintiff, and "at

all times refused to recognize the right of possession or the title" of the bank, said indemnity company or the plaintiff or either of them, in and to the peanuts. It does not appear that the defendants or either of them acquired these peanuts as bona fide purchasers for value from the warehouse without notice, relying on the fact that the physical possession thereof was in the warehouseman.

Such delivery of the peanuts to the defendants, under the allegations of the petition, did not convey good title to the cotton oil company. The warehouseman had no title. The delivery of these peanuts to the defendants, after they had been thus delivered to the bank and after the title had passed by the pledge and the issuance of the receipts, did not convey title thereto. There was no title for the warehouseman to convey.

■ The defendants contend further that the petition, showing delivery of the peanuts to the cotton oil company prior to August 26, 1949, the date on which the indemnity company transferred these notes and receipts, which it had acquired from the bank, to the plaintiff, there can be no recovery in trover by the plaintiff. This is true, defendants say, because the conversion, if any, took place prior to the transfer to the plaintiff, and that the plaintiff, by such transfer, did not acquire the right to maintain trover, even if the bank or the indemnity company had had this right. This court does not agree with this contention of the defendants.

A pledgee has such a special property in the thing pledged as will enable him to maintain an action in trover for its recovery or its value from a third person who has wrongfully obtained possession or converted it to his own use. See *Farmers &c. Bank* v. *Hamilton*, 30 *Ga. App.* 194 (117 S. E. 287). "It is well settled that, to support an action of trover, the plaintiff must show either title in himself at the time when the suit was commenced, prior possession, or the right of possession." *Southern Ry. Co.* v. *Strozier*, 10 *Ga. App.* 157; *Sellers* v. *Sellers*, 76 *Ga. App.* 410. In *Carter* v. *Hornsby*, 68 *Ga. App.* 424, 428, this court held that "The general rule is that the plaintiff in order to maintain trover must show either title or right of possession wrongfully withheld by the defendant."

"A right of action is assignable if it involves, directly or in-

directly, a right of property." Code, § 85-1805; *Sullivan v. Curling*, 149 *Ga*. 96 (99 S. E. 533). In *Dunlap Huckabee Auto Co. v. Central Ga. Automotive Co.*, 31 *Ga. App*. 617, 619, 620 (122 S. E. 69), the court said "Under the law as it formerly was, that a cause of action in tort could not be assigned, an action in trover could not therefore have been employed by any-one in whom the title to the property did not lie at the time the property was illegally converted . . Under the law as it now exists, relative to the assignment of actions in tort, as to the necessity of the property having been owned by the plaintiff at the time the tort was committed, the title must nevertheless be in the plaintiff at the time the action in trover is instituted. The rights of the parties are always fixed and determined by the status existing at the time a suit is instituted . . Under the allegations of the petition it appears that the plaintiff's claim is actually based upon an alleged title existing in itself at the time the suit was filed, and not upon title existing at the time of the alleged conversion." In *McWhorter v. Moore*, 7 *Ga. App*. 439, 440 (67 S. E. 115), the court held: "The mere circumstance that thereafter the warehouseman had paid the true owner for the cotton and had taken up the receipt did not defeat this cause of action in trover, but on the other hand vested in the warehouseman the title to the cotton. At the time of the suit, therefore, the warehouseman had both the title and the right of possession to the cotton, and plainly could re-cover it in trover from one who had no title and who had ob-tained possession by fraud." The conversion in that case took place before the plaintiff therein purchased the warehouse re-ceipt.

■ The defendants further set up that the "custodian re-ceipts" if treated as "warehouse receipts" have not been ef-fectively transferred inasmuch as they are to the order in writ-ing of the bank and there appears no endorsement or transfer upon any of the actual receipts. We cannot concur with the defendants in this position. The Uniform Warehouse Receipt Act (Ga. Laws, 1937-38, Ex. Sess. pp. 390, 406; Code, Ann. Supp., § 111-441) provides that "A receipt which is not in such form that it can be negotiated by delivery may be transferred by the holder by delivery to a purchaser or donee." We have

seen from the act that these receipts were negotiable instruments, not non-negotiable ones. Code (Ann. Supp.) § 111-407. There is no requirement that the transfer or assignment of a negotiable warehouse receipt must be written upon the receipt itself. The assignment from the bank to the indemnity company and from that company to the plaintiff were not, for the reason that they constituted separate writings, describing the receipts and notes transferred, not attached to or upon the receipts themselves, ineffective to pass· the title to the peanuts to the bank and ultimately to the plaintiff. Such title actually passed into the plaintiff by these assignments. See Uniform Warehouse Receipt Act (Code, Ann. Supp., § 111-443), supra. Therefore, the cases cited and relied on by the defendants (*Kramer* v. *Spradlin*, 148 *Ga.* 805, 98 S. E. 487; *Hendrick* v. *Daniel*, 119 *Ga.* 358, 46 S. E. 438), are not applicable here. Nothing to the contrary of what we hold was held in these decisions.

There is no merit in the contention that there was no transfer of the peanuts from the bank to the indemnity company, the transfer of the notes without recourse on the bank, satisfying any possible claims against the peanuts. The transfer and assignment from the bank to the indemnity company and from that company to the plaintiff expressly transfers and conveys these receipts and the notes and all of the right, title and interest of the transferors therein, and under Code § 12-608, supra, it is provided that a transfer and assignment of the debt carries with it the pledge. The case of *Burch* v. *Pedigo*, 113 *Ga.* 1157 (39 S. E. 493), is not to the contrary. It is there ruled that there was no transfer of the title, as in the situation here involved.

■ It is further contended that there is no cause of action against the defendant agent, Graham, and that the demurrer of such defendant should have been sustained. "Whoever meddles with another's property, whether as principal or agent, does so at his peril, and it makes no difference that in doing so he acts in good faith, nor in case of an agent, that he delivers the property to his principal before receiving notice of the claim of the owner. If an agent takes the property of another without his consent and delivers it to the principal, it is a conversion, and trover will lie for the recovery of the property or

196

for damages, as the plaintiff may elect." *National Bank of Tifton* v. *Piland*, 22 *Ga. App.* 471, 472 (b) (96 S. E. 341); *Flannery* v. *Harley*, 117 *Ga.* 483, 485 (43 S. E. 765). "An agent, who for and in behalf of his principal takes the property of another without the latter's consent, is as to him guilty of a conversion, although being ignorant of the true owner's title, the agent may have acted in perfect good faith; and such agent may be sued in trover for the property, even after his delivery of it to his principal." *Friedman* v. *Odom*, 79 *Ga. App.* 107 (53 S. E. 2d, 136), and citations.

Also such an agent may be sued jointly with his principal for such conversion. *Long* v. *Dye*, 42 *Ga. App.* 726 (5, 6) (157 S. E. 359); *Council* v. *Nunn*, 41 *Ga. App.* 407 (153 S. E. 234).

■ In the view which we take of this case it is not necessary to determine whether the plaintiff as agent of the warehouseman had such title as to support an action in trover. The plaintiff was entitled as transferee of the indemnity company, which had acquired title to the receipts and notes and hence to the peanuts from the bank, to maintain trover in his own right against the defendants. He had title to the peanuts at the time he instituted the suit.

There is nothing in *Willis* v. *Burch*, 116 *Ga.* 374, 375 (42 S. E. 718), and *McElmurray* v. *Harris*, 117 *Ga.* 919 (43 S. E. 987), to the contrary of our holding here that plaintiff, by reason of the transfers from the bank to the indemnity company and from that company to him, can maintain this action in trover against the defendants, although the alleged conversion took place prior to the time he acquired the title to said receipts and to the property therein described. The receipts given for the peanuts and pledged with the bank were symbolic of title and under the authorities the title passed and the transferee succeeded to all rights and remedies of the transferor with reference to the debt and to the pledge. The plaintiff could enforce his rights by trover in the same manner that the bank could have done. See *Hunter* v. *Lawton-Anderson Co.*, 12 *Ga. App.* 23, 25 (76 S. E. 782); *Sullivan* v. *Curling*, 149 *Ga.* 96, 102 (99 S. E. 533), distinguishing and limiting the cases above referred to.

The question of equitable subrogation is not involved under

the facts of this case. The plaintiff under the law acquired the title to the peanuts and could maintain this trover. The transfer from the bank to the indemnity company and from that company to him vested in him the title and right to possession of the peanuts. He stood in the shoes of the bank.

In the view which we take of the case, the facts of the amendment added naught to the plaintiff's case, as alleged in the original petition, and the overruling of the demurrer thereto worked no harm to the plaintiff.

The only demurrer which seems to be of merit is that the petition alleged only that delivery of the peanuts to the defendants was made at some date subsequent to November 11, 1945, whereas in fact some of the alleged warehouse receipts and notes attached to the petition as exhibits were dated later than the date after which the alleged delivery to defendants took place. We think that this ground of the demurrer is well taken.

It is directed that the plaintiff be given ten days from the date of the remittitur in the lower court in which to amend his petition, in this respect, otherwise the demurrer in this regard is sustained.

It follows that the trial court did not err, with the exception as above stated, in overruling the defendants' demurrers to the petition.

*Judgment affirmed with direction. MacIntyre, P.J., and Townsend, J., concur.*