**UNITED STATES of America**

v.

**LaGRANGE STOCKYARD, INC.**

**Civ. A. No. 737.**

United States District Court
N. D. Georgia,
Newnan Division.

April 7, 1967.

Charles L. Goodson, U. S. Atty., by Beverly B. Bates, Asst. U. S. Atty., for United States, plaintiff.

Ketzky & Hipp, LaGrange, Ga., for defendant.

SLOAN, District Judge.

The plaintiff in the above stated case alleges that it made two operating loans to Frank Washington and Dorothy H. Washington under the authority of the Bankhead-Jones Farm Tenant Act, as amended, 7 U.S.C. § 1007 et seq., receiving two notes to evidence the loans and a bill of sale to certain described livestock to secure the same. Plaintiff sues the LaGrange Stockyard, Inc. alleging that it, without the knowledge or consent of plaintiff, received from Frank Washington 19 cows, 12 heifers and 1 bull covered by the bill of sale and sold and delivered said livestock to third parties and transmitted the proceeds of the sale, amounting to $3,222.12, to Frank Washington thus converting the property of plaintiff.

Defendant denies that it ever converted to its own use or executed dominion and control over same in its own right, contends that it is not liable, contending it was a commission agent handling the sale of cattle and never exercised dominion or control over the

property and did not convert the plaintiff's property.

Plaintiff files a motion for summary judgment with supporting affidavits with excerpts from the records evidencing the sale of the cattle by defendant.

The defendant responds—also filing supporting affidavits.

Briefs and/or written arguments having been filed in support of and in opposition to the motion for summary judgment the same is now properly before the Court for determination.

## FINDINGS OF FACT

The following facts appear from the records presented and are uncontroverted in the record.

1. Plaintiff made two loans to Frank Washington and Dorothy H. Washington under the authority of the Bankhead-Jones Farm Tenant Act, as amended, 7 U.S.C. § 1007 et seq. Said loans being in the sum of $9,990.00 on May 26, 1958, and the other dated October 8, 1958, in the sum of $3,300.00.

2. Each of these loans was evidenced by a note executed by the Washingtons, bearing the date the said loan was made.

3. The debts evidenced by these notes have been declared due and payable and the plaintiff has at all times and is now the owner and holder of same and there is due and owing on said debts and notes an unpaid total principal in the amount of $6,693.18 plus interest.

4. To secure the indebtedness the Washingtons executed and delivered to plaintiff a bill of sale to secure debt dated November 21, 1958, which was duly and properly recorded in the office of the Clerk of the Superior Court for Meriwether County, Georgia, in Book 115, Folio 29, and the plaintiff is the owner and holder thereof.

5. Defendant operated a public market for the sale of livestock when the claim of plaintiff arose.

6. Between February 17, 1959 and March 1, 1960, Frank Washington delivered to the LaGrange Stockyard, Inc., defendant, 19 cows, 12 heifers and 1 bull covered by and subject to the terms and conditions of said bill of sale to secure a debt and as commission agent for Frank Washington, defendant sold and delivered said livestock to third parties and transmitted the proceeds of the sales amount to $3,222.12 to the said Frank Washington, who used the same in the operation of his business.

7. Plaintiff never consented to or had knowledge of the sale by auction and the same was unknown to plaintiff until March 13, 1962.

8. Plaintiff has made demand on defendant for the sum of $3,222.12 plus interest but the defendant has failed to pay the same.

### Discussion

It appears from the affidavit attached to the defendant's response to plaintiff's motion for summary judgment that during the fall of 1958 Washington received permission from Wilbert Gilpin of the Farmers Home Administration office in Newnan, Georgia, to sell 5 cows at the LaGrange Stockyard, Inc. and received from the sale approximately $700.00 by check which he then endorsed to the Farmers Home Administration to be credited to his account.

And that in December, 1959, received like permission from Gilpin for the release of 2 or 3 cattle which were sold shortly thereafter.

It is not contended by Washington in this affidavit that he ever received any consent or authority for the sale of the 19 cows, 12 heifers and 1 bull which were sold by defendant for the sum of $3,222.12.

Washington does state in paragraph three of his affidavit, as follows:

"That all of the monies received from sale of livestock through LaGrange Stockyard, Inc., were used in the operation of affiant's business and either directly or indirectly said sums were paid by affiant to Farmers Home Administration."

It is uncontroverted that there is presently due by the Washingtons to plaintiff on said notes the sum of $6,-693.18 besides interest.

It is uncontroverted that the sums received by the Washingtons from the proceeds of the instant sale by defendant, were used in the operation of Washington's business.

There is no genuine issue as to any material fact necessary to decision here.

## CONCLUSIONS OF LAW

■ It is not necessary to decide in this case whether the State law is to be applied, [United States v. Kramel, 8 Cir., 234 F.2d 577; Cook Motor Co. of Panama City, Inc. v. Richardson, 103 Ga.App. 129, 118 S.E.2d 502] or the federal law would govern [United States v. Matthews, 9 Cir., 244 F.2d 626(1)] since under the law of Georgia the defendant is liable and under the federal law a judgment for the plaintiff is required.

Research fails to disclose a direct ruling by Georgia Courts on the question of the liability of an auctioneer to the true owner for conversion when he auctions property in behalf of a principal who has no title thereto. It will, therefore, be necessary to apply the general law of Georgia in determining the question here presented.

■ In sales at auction the relationship between the seller and auctioneer is that of principal and agent.

■ An agent may be guilty of conversion even though he has no knowledge of the true owner's title and acts in good faith. National Bank of Tifton v. Piland, 22 Ga.App. 471, 96 S.E. 341; Friedman v. Odom, 79 Ga.App. 107, 53 S.E.2d 136; Graham v. Frazier, 82 Ga. App. 185, 60 S.E.2d 833.

"Any distinct act of dominion wrongfully asserted over another's property in denial of his right, or inconsistent with it, is a conversion. It is unnecessary to show that the defendant applied it to his own use, if he exercised dominion over it in defiance of the owner's right, or in a manner inconsistent with it. It is in law a conversion whether it be for his own or any other's use." Comer v. Rome Chevrolet Co., 40 Ga.App. 820, 151 S.E. 678.

A bill of sale to secure a debt transfers security to the lender. Jones v. Brown, 108 Ga.App. 776, 134 S.E.2d 440(1).

"[T]he almost universally accepted rule is that an agent, factor, commission merchant or auctioneer who receives property from his principal, sells it and pays the proceeds to him is guilty of conversion if the principal has no title to the property, even though the agent acts without knowledge of the defect title." United States v. Union Livestock Sales Co., 298 F.2d 755 (4 Cir. 1962).

See also, United States v. Matthews, 9 Cir., 244 F.2d 626; United States v. Sommerville, 3 Cir., 324 F.2d 712; 7 C.J.S., Auctions, § 13(c); 14 C.J.S., Chattel Mortgages, § 264(a).

The holding in United States v. Kramel, 234 F.2d 577, (8 Cir. 1956) which held on the basis of State precedent that the Federal Packers and Stockyards Act absolve the commission agent from liability was specifically disagreed with in United States v. Matthews, 9 Cir., 244 F.2d 626. See also John Clay & Co. v. Clements, 214 F.2d 803(6), (5 Cir. 1954).

Plaintiff's motion for summary judgment is granted and the same may be prepared and presented.